HOLLADAY-KLOTZ LAND & LUMBER COMPANY, Appellant, v. THE BEEKMAN LUMBER COMPANY, Respondent.

Kansas City Court of Appeals, January 11, 1909.

1. **CONTRACTS: Substitute: Consideration: Doubtful Claim.** A claim for the interpretation of a contract to constitute a sufficient consideration to support a substituted agreement must be *bona fide* and under color of right, otherwise the substituted agreement is *nudum pactum*.

2. ——: ——: ——: ——: **Evidence.** The above principle applied to the evidence in the record leaves the substituted

contract without consideration since the parties had an entirely different understanding of the meaning of the contract from the one necessary to constitute the alleged consideration.

3. ——————: ——————: ——————: ——————: ——————. Where the evidence shows that the alleged interpretation claimed as a sufficient consideration was not the true cause for the attempted cancellation, the substituted agreement is without consideration.

4. ——————: ——————: ——————: ——————: ——————: Appellate Practice. Where the alleged consideration for the substituted agreement was not called to the attention of the trial court the appellate court cannot be asked to consider it.

5. ——————: ——————: ——————: ——————: ——————: ——————: Pleading. Though a counterclaim fails to state a cause of action yet if the trial proceeds on the theory that there is no variance between the proof and the allegation and the variance is not brought to the attention of the trial court the parties are held to have waived their right to raise such objection where the counterclaim does allege the giving of orders for merchandise and the confirmation of the same by the parties.

6. ——————: ——————: ——————: ——————: ——————: ——————: ——————: Damages. Where a counterclaim is for damages only and not for specific performance it need not aver the defendant's willingness and readiness to perform the contract.

### On Motion for Rehearing.

7. ——————: ——————: ——————: ——————: Construction. An alleged substituted contract for the purchase of lumber is construed and held not to entitle defendant to take or reject the lumber on its own inspection finally.

Appeal from Jackson Circuit Court.—*Hon. Henry L. McCune*, Judge.

AFFIRMED.

*Gamble & Taylor* for appellant.

(1) The true contract was on the terms not of the original order, but of the varying acceptance, which did not provide for the rejection of mill culls. 9 Cyc. 265; Taylor v. Van Schreider, 107 Mo. 206; Mumford v. Wilson, 15 Mo. 540; Strange v. Crowley, 91 Mo. 287; McLean v. Pastime Gym. Asso., 64 Mo. App. 55; Cangas v. Rumsey Mfg. Co., 37 Mo. App. 297; Howard v.

136 App—12

Scott, 98 Mo. App. 514; 9 Cyc. 269, 270; 1 Page on Cont., sec. 46; 1 Beach, Cont., sec. 55. (2) Plaintiff permitted defendant to take the first two car loads with mill culls thrown out on condition that plaintiff should be relieved of the contract, and with this condition attached, defendant accepted the lumber, which amounts to an accord and satisfaction.   1 Cyc., 329; Note under Fuller v. Kemp, 20 L. R. A. 805; Deutman v. Kilpatrick, 51 Mo. App. 51; Brink v. Garland, 58 Mo. App. 356; Helling v. United Order, etc., 29 Mo. App. 309.   (3) Defendant committed a breach of the contract by rejecting mill culls, and by refusal to perform the contract by receiving and paying for the lumber with the mill culls in, which precludes it from recovery.   9 Cyc., 634; Denny v. Kile, 16 Mo. 450.   (4) The contract embodied in the letters of May 12th to May 17th was a complete substitution for the original contract, was upheld by a valuable consideration and defeats a recovery on the counterclaim.   9 Cyc., 244; 9 Cyc., 593, 594; Lanitz v. King, 93 Mo. 513; Com. Co. v. Kilbourne, 111 Mo. App. 542; Couteau v. Iron Works, 83 Mo. 73; Fine v. Rogers, 15 Mo. 315; 9 Cyc., 347, et seq.; 9 Cyc., 353; 1 Cyc., 336-337; Wald's Pollock on Cont., 351; 2 Parsons on Cont., 837, 681, sec. 4.   (5) The motion in arrest should have been sustained because the counterclaim states no cause of action in that it does not plead an acceptance of defendant's order, nor an acceptance by defendant of plaintiff's counter proposition contained in its varying acceptance, and hence fails to plead the existence of any contract.   Cangas v. Rumsey M'fg. Co., 37 Mo. App. 397; Strange v. Crowley, 91 Mo. 287; Taylor v. Schreider, 107 Mo. 206; McLean v. Pastime, etc., 64 Mo. App. 55.   (6) The counterclaim also fails to plead that defendant was ready, willing and able to perform its part of whatever contract existed between the parties, and in this respect, falls short of stating a cause of action.   9 Cyc., 723; 4 Ency. of Pl. and Pr., p. 932.

*Stewart Taylor* for respondent.

(1) This is an action at law. No instructions were asked, given or refused. There is, therefore, no question open for review here, except errors apparent on the face of the record proper, and the question whether under the issues defendant made a *prima-facie* case on its counterclaim. Rausch v. Michel, 192 Mo. 302; Irvine v. Karnes, 58 Mo. App. 254. (2) It is axiomatic that in an appellate court the cause should be reheard on the same theory it was heard *nisi*. Parties are usually held bound on appeal, by positions taken in the trial court. Kilpatrick v. Wiley, 197 Mo. 171; Helling v. United Order of Honor, 29 Mo. App. 309. (3) There was no *bona fide* dispute about the original agreement, and as nothing was done under the so-called new agreement, it was without consideration. A mere agreement to accept less than the real debt would be *nudum pactum*. Dry Goods Co. v. Goss, 65 Mo. App. 65; Zerr v. Klug, 121 Mo. App. 292. (4) Accord without satisfaction is insufficient. Goff v. Mulholland, 28 Mo. 397; Gibbony v. Ins. Co., 48 Mo. App. 185; Dry Goods Co. v. Goss, 65 Mo. App. 59. (5) The alleged new contract embodied in the letters of May 12th to 17th, was induced by false representations of fact, the plaintiff never at any time being in position to deliver the quantity of lumber stated. Plaintiff also suppressed the fact that the lumber had been rendered unsalable by flood.

BROADDUS, P. J.—The defendant, a company dealing in lumber, entered into a contract with plaintiff, a company manufacturing lumber from logs, for the purchase of a lot of lumber. The contract called for five to ten cars, each, of maple and elm lumber of a certain description. This contract was the result of correspondence. Plaintiff answered a circular letter of defendant seeking the purchase of lumber, in which it asked the price defendant would pay, its terms, etc.

Defendant replied, this reply constituting an offer, which was accepted with a qualification by plaintiff. This qualification was that plaintiff reserved the right to cancel the contract when inspection was too severe or to call in a representative of National Hardwood Lumber Association, whose decision would be final; and defendant answered that it would be agreeable to it to have an inspector of the association to determine disputes. Defendant sent plaintiff two orders and plaintiff confirmed them. Plaintiff got some lumber ready for shipment and defendant sent an inspector by the name of Ensor to inspect, and when he had inspected two cars, plaintiff wrote saying his inspection was too severe and cancelled the contract. These two cars were shipped to defendant. Defendant claimed that plaintiff had no right to cancel, but that the matter should be submitted to an inspector from the association and by correspondence they urged their respective claims. Finally, plaintiff made a proposition to ship all the lumber of the description required by the contract, which it then had on hand, provided defendant would consider the orders filled; and, after some inquiry by defendant as to quantity of lumber on hand and a qualification as to two-inch stuff, the proposition was accepted by defendant.

This suit is for the value of the two cars shipped and defendant has filed a counterclaim for damages for failure of plaintiff to fulfill the terms of the original contract. Plaintiff denies the right of defendant to any counterclaim on the original contract, as that contract has been superseded by a subsequent one, the obligations of which plaintiff is ready and willing to perform. The question for determination is whether or not the substituted agreement has a valid consideration and upon this determination rests the rights of the parties. It is contended by plaintiff that a bona fide dispute being settled by the substituted agreement constituted a sufficient consideration for it.

There was a dispute, but was it of such a nature that its compromise would constitute a consideration for a contract? In Clark on Contracts, p. 177, it is said, "Most of the courts have said that the claim must be at least doubtful; or that it must not only be bona fide, but under 'color of right'; or that there must be reasonable ground for belief in the validity of the claim,—and this would seem to be the proper doctrine. An ignorant person may in good faith believe that he has a just claim against another, when in fact there is not the slightest ground for his belief. Can it be that a promise exacted from the other in order that he may escape the annoyance and expense of liquidation furnished any consideration? The proper doctrine is that, 'in order to support the promise, there must be such a claim as to lay a reasonable ground for the defendant's making the promise; and then it is immaterial on which side the right may ultimately prove to be.' " In U. S. Mortgage Co. v. Henderson (Ind.), 12 N. E. l. c. 95, it is said, "In order that a compromise may constitute a sufficient consideration for the enforcement of an executory contract, there must have been an actual bona fide claim found upon a colorable right, about which there was room for honest doubt and actual dispute." And by our own Supreme Court, it was said in Long v. Towl, 42 Mo. l. c. 550, "To make the settlement of assumed rights a sufficient consideration for a promise, there must be at least an appearance of right sufficient to raise a possible doubt in favor of the party asserting the claim."

Applying the rule of law that there must be an actual bona fide claim upon a colorable right, we believe that the claim of plaintiff was not made under color of right, nor was it bona fide. The dispute arose under the original contract and, to construe this contract, we must look at it as the parties did at its making and in their controversy about it. Conceding the original contract is partly embraced in the letters (as was claimed by

plaintiff at time of the controversy) and not wholly embodied in the orders and confirmations, there is plaintiff's acceptance stating it would reserve the right to cancel or call in disinterested inspector when inspection proved too severe. This was a qualification of the offer and must have been accepted; and defendant immediately wrote saying it would be agreeable to it to submit to disinterested inspection. It was meant by this qualification that defendant should not have the sole right of determining the inspection, that plaintiff must have some protection, and that defendant must consent to either of two things, i. e., plaintiff's right to cancel, or to submit to inspection by a disinterested inspector—and defendant chose the latter as the only sensible thing to do. And subsequent correspondence affirms that was, at the time of making of contract, the intention of the parties. The orders and confirmations, which were the contract in fuller detail, failed to state the right to cancel, but did state the right to disinterested inspection; plaintiff had the right to protest against this omission in the orders and made it in its own confirmations. Defendant undoubtedly had this understanding of the contract and his conception of it was probably known to plaintiff. Defendant sold the lumber ordered before delivery to other parties, which would not have been likely had plaintiff had the right to cancel the contract at any time it claimed inspection too severe, for by plaintiff's refusal to perform defendant became unable to fulfill its other obligations and was responsible for damages. It seems to us that that is the only reasonable intent of the parties to be discerned from the contract, and about which there can be no ground for doubt.

And, even had we determined that the right to cancel did exist under the contract, or there was doubt about its existence, plaintiff would have no occasion for its exercise except when inspection was too severe. If we find the severity of inspection was not the cause

of cancellation, but ulterior motives, plaintiff would not have been advancing a doubtful claim or even a bona fide claim. As throwing light on this matter, there is one letter, that of March 19, 1904, in which plaintiff wrote, "We want to give you a history of this case. Your order was accepted by a man who was entirely ignorant of the specifications of mill run or log run maple and elm, and it will be impossible for us to fill your order as it stands. We do not have anything like the amount you ordered." Defendant answered to the effect that that excuse would not relieve it from any liability. Plaintiff replied, in which reply it explained its letter of the 19th, saying, "What we intended to say was, that on account of the immense amount of culls found in each pile there would only be a car each of maple and elm that would go on the specifications." We can't see how that explains or changes the impression conveyed by the former letter. Undoubtedly, there were so many culls found that it was impossible to fill the order according to specifications. The letter simply shows that an ignorant agent miscalculated, and for that reason plaintiff was seeking to cancel the contract. And this conclusion is strengthened by the fact that plaintiff would not submit, although making a claim of too severe inspection, to a disinterested inspection—which course a fair-minded man would have pursued although he might have had the right to cancel without such submission.

Plaintiff says there was a dispute as to right of defendant to reject mill culls and that the settlement of this furnished consideration for the substituted agreement. We are not able to find that there was any dispute of this nature between the parties, and, if there was, plaintiff in its brief in the trial court failed to mention and to rely on it. He certainly cannot now ask our attention to it.

Plaintiff in his motion in arrest of judgment alleged that the counterclaim of defendant on its face failed

to state a cause of action in that it did not allege acceptance of plaintiff's varying confirmations of defendant's orders.   This is true, but the case proceeded to trial as if there was no variance, and the fact that there was a variance was not brought to the court's attention during the trial; and, if at all, only after judgment. Plaintiff will be held to have waived any right to raise this objection, for the counterclaim does allege that orders were given and confirmations made,—that there was an offer and acceptance.

Plaintiff alleges also that the counterclaim did not state a cause of action for the further reason that defendant failed to state willingness and readiness to perform its part of the contract.   This is not an action for specific performance of a contract, but for damages for the violation of one.   The plaintiff having notified defendant that it could not comply with its contract and having repudiated the same, there was no obligation upon the part of defendant to comply on its part. The defendant had only one remedy and that was an action for damages on the contract. · The plaintiff's authorities on the question have no application to this kind of an action.

Affirmed.   All concur.

## ON MOTION FOR REHEARING.

Plaintiff or appellant now insists that we overlooked his point that there was a consideration for the substituted agreement in that defendant acquired a valuable right it had not possessed under the original contract, viz., the right to inspection on its part, which inspection was to be final.   The proposition of the substituted agreement was "We will ship *on your inspection* all the maple and elm we have on hand, provided you will consider the order filled."   Defendant wrote to learn the quantity on hand and received a reply promptly.   Defendant, on May 17th, wrote, "Your pro-

posal is satisfactory and accepted, provided we are to have the privilege to leave out the 2″ maple and elm in case we are unable to use it.  .  .  .  We understand from your letter that you desire us to send an inspector to load the lumber, and upon receipt of your reply stating about when you will be ready to load, we will send a man to load it.  Should you desire to have some *independent disinterested inspector* load the material, please advise us and suggest some one who will be satisfactory to you, and ascertain whether or not you can secure his services.  Plaintiff consummated the contract on May 21st in the following, "Yours of 17th to hand and noted.  You need not take the 2″ maple and elm unless you want to."

It is said that the substituted agreement confers upon the defendant the right to inspect the material and that its inspection would be final.  The right claimed to be conferred is based upon the words, "on your inspection."  Whatever might be the meaning of this expression without any qualification and under the circumstances of the case is of no importance, as in the defendant's letter of May 17th the construction plaintiff places upon it is clearly negatived.  It is apparent in that letter that defendant did not know it possessed such a valuable right.  And plaintiff acquiesced in the views of defendant so far as the correspondence indicates; and the contract is comprised in the correspondence.

Motion overruled.  All concur.