### SOCONY–VACUUM OIL CO., Inc., v. LAMBERT.

#### No. 5617.

Court of Civil Appeals of Texas. Amarillo.
May 15, 1944.

Lipscomb & Lipscomb, of Beaumont, and John W. Knox, of New York City, for appellant.

Adams, Hart & Daughtry, of Beaumont, for appellee.

STOKES, Justice.

This is an action for damages instituted by the appellee, Claude Lambert, against the appellant, Socony-Vacuum Oil Company, Incorporated, in which the appellee sought to recover damages for personal injuries received by him while employed by appellant as a seaman on the steamship Rochester, an oil tanker owned by appellant and plying between the ports of New York and Beaumont. About midday on January 30, 1942, off the Virginia coast, an explosion of some kind occurred and the ship was damaged to such an extent that it sank. The appellee had been asleep in the forecastle and a few seconds before the explosion occurred he awoke and approached the door, intending to go to the lavatory located in another part of the ship. As he placed his hand on the doorknob, the explosion occurred and he was injured to such an extent that he immediately became unconscious and remained in that state until some time afterwards when he realized he was in the bow of a lifeboat. No question is raised as to the seriousness of his injuries. He was placed in a hospital where he remained for seventeen days and his condition required medical attention from that time and he had by no means recovered at the time of the trial. He alleged that the steamship Rochester was torpedoed "presumably by a German submarine"; that The Rochester was not armed with defensive guns or weapons by which it could defend itself against submarine attack; and that in failing to arm the vessel the appellant was guilty of negligence which proximately caused his injuries.

The case was submitted to a jury upon special issues, in answer to which the jury found that the steamship Rochester was sunk as a result of torpedo fire by an enemy submarine, as a proximate result of which appellee received his injuries; that the vessel was not armed; that the failure of appellant to arm the ship was negligence, which negligence was a proximate cause of the personal injuries suffered by the ap-

pellee; that $18,312.50 would reasonably compensate appellee for the injuries received by him and that to provide reasonable medical care and maintenance from the date he received the injury until he probably would recover would require $2,700. The court rendered judgment in favor of the appellee for the amounts, respectively, found by the jury and, its motion for a new trial being overruled, appellant perfected an appeal to the Court of Civil Appeals for the Ninth Supreme Judicial District, at Beaumont. By an order equalizing the dockets of the Courts of Civil Appeals, the Supreme Court has transferred the case to this court and it is now before us for review.

Appellant presents and urges eight assignments of error, but in the view we take of the case it will not be necessary to discuss any of them except the fourth, which is to the effect that the court erred in submitting to the jury Special Issue No. 2, calling for a finding as to whether the steamship Rochester was sunk as a result of torpedo fire from an enemy submarine, because there was no proof in the record to support such finding. It is obvious that if this assignment of error is well taken, appellee was not entitled to recover anything from the appellant as damages and, in our opinion, the judgment is lacking in support in the evidence on this vital question. The only witness who testified as to the cause of the sinking of the steamship Rochester was the appellee. His testimony was that he had no recollection of the manner in which he left or was taken from the vessel after the explosion occurred. He said he was in his room and had been asleep but that he awoke, slipped on his shoes, intending to enter the hall and go to the lavatory; that when he reached the door of his room something happened and he knew nothing from that time until he awoke in the bow of a lifeboat, at which time he regained semiconsciousness. He said the last thing he remembered was when he placed his hand on the doorknob to open the door and that "then is when the torpedo struck, or whatever it was, and I know no more." Upon being asked what happened to the ship, he said it was torpedoed and sunk. No other witness testified concerning the sinking of the ship, and it will be noted that even the appellee himself did not testify that it was torpedoed by an enemy submarine. We take judicial notice that on the date the ship was sunk, this country

was at war with Germany and Japan, and it is a matter of common knowledge, of which we also take judicial notice, that enemy submarines were then infesting the waters of the American Atlantic coast, but that this ship was attacked and sunk by an enemy submarine was a vital matter of fact which it was necessary to establish by competent testimony, and the burden of proving it rested upon the appellee. It is well known that ships were being sunk in almost all the waters of the seven seas by mines, both floating and submerged. It is also known that ships were being sunk as a result of internal explosions, and since the negligence charged against appellant by appellee was the failure to equip the steamship Rochester with armaments by which it could have defended itself against submarines, and that if it had done so the catastrophe would not have occurred, it was essential that he prove by competent testimony that his injuries resulted from such failure. No one would claim that guns or any sort of defensive weapons would have protected the ship against floating or submerged mines, and obviously they would not have protected it against an internal explosion.

Appellant strongly contests the allegations of negligence and contends that for a number of reasons it was not guilty of negligence in failing to arm the vessel. Among such contentions are: That it did not have the legal right to arm the steamship Rochester; that no armaments were available; that it was not customary to arm such vessels; and that the United States Shipping Board and other governmental agencies, including the Navy, had assumed both the responsibility and the authority to arm merchant vessels. Conceding, for the sake of the discussion, however, that appellant was guilty of negligence in failing to arm the vessel, as found by the jury, there is no evidence by which it may reasonably be inferred that such negligence was the proximate cause of the explosion and resulting injury to the appellee. The testimony is wholly destitute of any proof that there was any causal connection whatever between the appellant's failure to arm the vessel and the injuries received by the appellee. No witness testified to the presence of an enemy submarine anywhere in the vicinity, or even in the region where the explosion occurred or that the missile which attacked or exploded and caused the ship to sink came from an enemy submarine or any other source that could have been forestalled by deck guns or any other armament on the steamship Rochester. The rule is thoroughly established in this State, as well as in other jurisdictions in this country, that this missing link in the evidence can not be supplied by presumption. It is a matter that must be proved by competent testimony, and the burden of proving it rests squarely upon the shoulders of the plaintiff in the case. Texas & P. R. Co. v. Shoemaker, 98 Tex. 451, 84 S.W. 1049; Missouri, K. & T. R. Co. v. Greenwood, 40 Tex.Civ.App. 252, 89 S.W. 810; Houston Lighting & Power Co. of 1905 v. Barnes, Tex.Civ.App., 152 S.W. 722; Houston East & West Texas R. Co. v. McHowell, Tex.Civ.App., 278 S.W. 258; St. Louis Southwestern R. Co. of Texas v. Linsey, Tex.Civ.App., 82 S.W.2d 686; Allen v. Republic Bldg. Co., Tex.Civ.App., 84 S.W.2d 506; Kelley v. Burlington-Rock Island R. Co., Tex.Civ.App., 100 S.W.2d 164; Chandler v. Texas & N. O. R. Co., Tex.Civ.App., 103 S.W.2d 811; Webester v. Henwood, Tex.Civ.App., 134 S.W.2d 333.

In the case of Chandler v. Texas & N. O. Ry. Co., supra, the plaintiff sued the railroad company to recover damages resulting from a death which obviously was the result of the deceased being struck and run over by one of defendant's trains. In passing upon a question very similar to the one presented by the record in the instant case and involving the same principle of law, the Court of Civil Appeals of the Tenth District at Waco said:

"Since the body of the deceased was found on the railroad track, near a public crossing, it is reasonable to assume that deceased was struck by one of the defendant's trains at or near said crossing. We may also assume that the passenger train was operated through the town at an excessive rate of speed on the morning in question, and that the employees were negligent in so operating it. But there is no evidence to show that the train which was so negligently operated struck the deceased. It is equally as certain that he was killed by the freight train, and no one testified that it was negligently operated. Moreover, there is no evidence to show the circumstances under which the deceased was struck by the train. If it should be conceded that the passenger train was operated at an excessive rate of speed, or that those in charge thereof failed to keep a proper lookout, or that the train was otherwise negligently

operated, the plaintiff wholly failed to meet the burden of proving, either by direct or circumstantial evidence, that such negligence, if any, was the proximate cause of the death of the deceased. The evidence was therefore insufficient to raise a question of fact for the jury, and the court properly instructed the jury to return a verdict for the defendant."

██ A long list of Texas authorities is cited by the court in support of the holding and, in our opinion, the principle announced in that case applies directly to the instant case. Of course, in cases of this kind, proximate cause and causal connection may be established by circumstantial evidence as well as by direct testimony, and where the circumstances are of a substantial nature, a jury is warranted in returning affirmative findings relative to those questions. But it is the universal holding of our courts that such matters cannot be established by presumption. If it had been shown by the testimony that an enemy submarine was seen in the vicinity within a reasonable time before or after the steamship Rochester was sunk, or that such a vessel had submerged in the vicinity before the explosion occurred, it would have constituted a circumstance, not a presumption, and the jury would have been warranted in giving it due consideration. No such circumstances were revealed in this case, however, and the finding of the jury to the effect that the steamship Rochester was sunk as a result of a torpedo fired by an enemy submarine has no support whatever in the testimony. It was a mere presumption and, as we have already said, such matters cannot be thus established.

██ Appellee's reply to the assignment of error we have discussed is that appellant recognized and admitted throughout the trial that the steamship Rochester was lost as the result of a torpedo attack by an enemy submarine and that all of the testimony from both sides conceded that the ship went down as the result of such an attack. He asserts that it is only the ingenuity of counsel that now, for the first time, injects a question of what actually caused the sinking. The basis of his contention in this respect is that, in the cross-examination of appellee by counsel for appellant, he asked appellee if, in his boyhood or any other time in his life, "before The Rochester was torpedoed," he had the hole in his head which he had exhibited. Another incident in the trial, to which our attention is called in regard to this matter, is the testimony of Ralph Bailey, a marine investigator and adjuster of the appellant, who procured from appellee an alleged release of his company for a nominal sum, in which Bailey said he had a discussion with appellee regarding the "torpedoing of the S. S. Rochester." The contention is that by propounding questions to the witness in such form, counsel for appellant admitted, or at least assumed, that the ship was destroyed as a result of a torpedo attack from an enemy submarine, and that the witness Bailey likewise admitted or assumed such in his testimony concerning the alleged settlement and release which he procured from the appellee. The record does not support appellee in his contention that this matter has been injected into the case by counsel for appellant since the case was tried. In the first place, neither the form of the question propounded by counsel nor the reference by the witness Bailey to the sinking constituted an admission. In the second place, the record shows that appellant objected to the submission of Special Issue No. 2 upon the ground that the proof was wholly insufficient to support an affirmative finding thereon; that there was no proof from which the jury could determine that the steamship was lost as a result of torpedo fire, the only proof on that subject being the testimony of appellee who said he felt a shock and immediately became unconscious and that the destruction of the ship from collision with a submerged mine was as consistent as the contention that it was sunk as a result of torpedo fire. Moreover, in its motion for a new trial, appellant called the attention of the court to its error in submitting to the jury an issue calling for a finding as to whether the defendant was negligent in failing to arm the vessel, because there was no evidence to support the issue. It further complained of the submission by the court of the issue of proximate cause upon the ground that there was no evidence to support a finding thereon or that failure of the owner of the vessel to arm it was a proximate cause of the injuries sustained by the appellee, and called the court's attention to the fact that the only evidence in relation to that matter was the statement of the appellee to the effect that he had been asleep and when he awoke and approached the door of the forecastle, he felt a shock of the explosion and that he was unconscious from that moment until he regained semiconscious-

ness in the lifeboat. Appellant asserted in its motion that such evidence failed to raise the issue of proximate cause and that a finding of the jury that failure to arm the vessel was the proximate cause of plaintiff's injuries was wholly without support in the evidence. Other references were made to the same matter in the motion for a new trial.

■ Nor do we think the reference by counsel for appellant to the catastrophe as being the result of torpedo fire, or the reference by the witness Bailey to the torpedoing of the ship, was of any consequence. The appellee had intimated in his direct testimony that the ship had been struck by a torpedo and the form of the question propounded by counsel for appellant merely followed the trend of appellee's testimony on direct examination. In his testimony the appellee did not state that the torpedo was launched by an enemy submarine.

Appellee stated that the ship was torpedoed, as a result of which it sank. As we have already said, this is the only testimony in the record which even suggests the cause of the sinking of the ship and obviously it was a mere conclusion of the appellee. He was inside his room when the explosion occurred and he immediately became unconscious and remained so for some time after the explosion occurred. Neither his statement nor the statement of Bailey, in which he referred to the torpedoing of the ship, constituted anything more than a mere presumption or conclusion and they were wholly insufficient to constitute a basis for the submission of special issues to the jury. Smith v. Lynn, Tex.Civ.App., 152 S.W.2d 838; Watson v. Tamez, Tex.Civ.App., 136 S.W.2d 645; Webb v. Reynolds, Tex.Com.App., 207 S.W. 914; Casualty Underwriters v. Rhone, 134 Tex. 50, 132 S.W.2d 97.

No serious attack is made upon the judgment awarding to appellee $2,700 for maintenance and cure. That portion of the judgment seems to have ample support in the testimony and we are not inclined to disturb it.

■ In our opinion, the court erred in submitting to the jury Special Issue No. 2, calling for a finding as to whether or not the ship was sunk as a result of torpedo fire by an enemy submarine, or any other special issue relating to causal connection between the negligence alleged by the appellee and the injuries sustained by him. Neither that special issue nor the judgment for damages entered by the court was supported by any evidence whatever. The case seems to have been fully developed on the trial and the judgment entered by the court below will therefore be here reformed so as to deny the appellee any recovery of damages. It will be affirmed, however, as to the item of $2,700 allowed for maintenance and cure.

HEARE, Justice (concurring).

I concur in the disposition of the appeal in this case, but base my conclusion on the determination of only one issue, namely, the lack of causal connection between the failure of the appellant to arm the S. S. Rochester and the injuries and damages sustained by the appellee. In my opinion, it is necessary to determine only that issue. In reaching this conclusion, it may be assumed, for the sake of argument, that the S. S. Rochester was sunk by an enemy torpedo and that there is sufficient evidence in the record to justify the jury in making that finding. Also, it may be assumed that the failure and omission on the part of the appellant to have the S. S. Rochester armed was negligence. On the issue of negligence, I say parenthetically that I entertain a grave doubt. Assuming, however, that the ship was sunk by an enemy torpedo and assuming that the appellant was guilty of negligence in failing to have the ship armed, it is my opinion that there is no basis for a finding that such failure to arm the S. S. Rochester was a proximate cause of the injuries and damages suffered by the appellee. Can it reasonably be deduced from the facts and circumstances, as revealed in this record, that had the S. S. Rochester been armed, the unfortunate event causing the injuries to the appellee would not have occurred? There is no evidence in the record supporting such a conclusion, and the jury must necessarily have based its finding on a presumption, or a chain of presumptions, that the presence of deck guns and a gun crew on the ship would have prevented an enemy submarine from firing the torpedo at the S. S. Rochester. I am unable to find any basis, either in the record or in any reasonable presumption, for such a conclusion. For the reason stated, I concur in the disposition that is being made of this appeal.