E. M. DUNCAN, Plaintiff-Appellant,

v.

William BLACK and Mary Ellen Black,
Defendants-Respondents.

No. 7737.

Springfield Court of Appeals.

Missouri.

May 15, 1959.

Robert A. Dempster, Daniel S. Norton, Sikeston, for plaintiff-appellant.

Blanton & Blanton, Sikeston, for defendants-respondents.

RUARK, Judge.

This is a suit on a note, but the tentacles of the question reach into the mysteries of cotton acreage allotments. The plaintiff, now appellant, sued the defendants-respondents on a $1,500 note. The note was pleaded in conventional form. The answer was admission of execution but denial of consideration. At trial, which was without jury, the plaintiff offered his note and rested. The defendants, as was their burden, since the note imports a valid consideration,[1] then went forward with the evidence, and on the uncontradicted evidence the following facts were established.

Defendant William Black, who appears to have inherited considerable land from his father, sold some 359 acres of this land to the plaintiff. The contract, after referring to the description, consideration, and items not here concerned, announced in a separate paragraph, *"Party of the second part is to receive a 65 acre cotton allotment with the land he is purchasing from the party of the first part."* Deed was executed on December 29, 1954.

Now the land so sold did not "carry" a 65-acre cotton allotment. When and as fixed by the county committee, the allotment was only 49.6 acres, and the parties undertook to make up the 15-plus-acre difference by using a part of the allotment allowed to Black's unsold land. The first crop year defendants "made up that difference" out of their own cotton allotment.[2] The following year plaintiff came to defendants and requested that they "do that again" (make up the difference). Defendant Black first assented, but later decided that he didn't cotton to this idea, backed out, and did not do it.

Sometime prior to September 13, 1956, the date of the note, plaintiff came to Black and told him that he (plaintiff) had been or would be penalized for planting more cotton than his allotment called for. He said he had been advised by a lawyer that defendant owed him damages "on the contract." Black asked if the matter couldn't be "settled," and the transaction was settled by the giving of the note in question.

It should be here noted that the evidence does not show, and it is not contended, that there was any fraud or misrepresentation, or any mistake of law or fact. Neither party contends the contract is ambiguous. Although on two occasions the defendants attempted to go back of the writing in order to show what was understood, on both occasions the *plaintiff* successfully objected on the ground that the written agreement speaks for itself.

The court rendered judgment for the defendants, and plaintiff has appealed. His contentions are premised upon the proposition that the giving of the note was a compromise of a disputed claim; that because plaintiff did not receive the complete consideration for which he bargained (the complete 65-acre cotton allotment), he was entitled to rescind; that in the new agreement (the acceptance of the note) he forbore this right of rescission, and this was sufficient consideration.

Among the respondents' contentions are (1) the contract for a 65-acre allotment was complied with by "making it up" for the one year; (2) there was no consideration because plaintiff's claim for damages had no basis; and (3) if there was a consideration it was illegal.

It is necessary that we first understand the nature of the thing the parties were attempting to bargain:

In the Agricultural Adjustment Act, Title 7 U.S.C.A. § 1282, there is a declaration of

---

1. Simmon v. Marion, Mo.App., 227 S.W.2d 127, 134; McGinnis v. Rolf, 239 Mo.App. 54, 189 S.W.2d 456.

2. How this was done we do not know.

policy, and in section 1341 there is a legislative finding and declaration that fluctuations in supplies of cotton disrupt orderly marketing, with consequent destruction of commerce; that without federal assistance farmers cannot prevent recurrence of excessive supplies and provide for orderly marketing; that it is in the interest of general welfare that the soil be not wasted by production of excessive supplies of cotton.

Accordingly it is provided that the Secretary of Agriculture shall fix and proclaim a national quota of cotton "for such marketing year," this to be submitted to a referendum, and if the required majority of the farmers vote to surrender a portion of their liberty in this respect, then the Secretary shall impose a national allotment for cotton "to be produced in the next calendar year." This allotment is thereafter apportioned among the states, and the state allotment is in turn apportioned among the counties, and the county allotment is in turn (by local committee) apportioned among the individual farms. The law provides for the reservation of a portion of the allotment in order to allow for adjustments, abnormal conditions, and new farms. It also provides that any allotment acreage which is voluntarily surrendered shall be reapportioned to other farms; and it further provides a penalty against the farmer for planting more than the allotment which has been established for his land. The Secretary is vested with power to make regulations necessary to carry out and enforce the Act, 7 U.S.C.A. § 1281 et seq.

■ The purpose and general scheme of the Act is to accomplish a national public benefit in controlling surplus and consequent abnormal prices by limiting production,[3] which purpose and benefit will fail unless the plan is carried out at farm level.[4] Under the Act and its administration, the individual farm acreage allotment is fixed by the county committee, whose finding of facts is final. The allotment runs with the land. It is not the separate "property" of the individual and is not subject to be sold, bartered or removed to other land.[5]

A situation somewhat similar to the one at hand arose in Luke v. Review Committee, D.C.W.D.La., 155 F.Supp. 719. A part of a farm was sold and the parties attempted themselves to divide the then existing allotment. The court said, loc. cit. 723:

"The County Committee and the Review Committee are legally prohibited from following the contract of sale and lease, which the plaintiff insists should be followed, since the Act and regulations under which cotton acreage allotments and quotas are established affirmatively determine how the cotton acreage history shall be divided, and the cotton acreage allotments established for a 'farm.' In addition to this affirmative action required on the part of the County Committee by the regulations, such Committee was specifically prohibited from carrying out the contractual arrangements of the parties, which were in conflict with Section 722.825 of the regulations. This section provides: 'A farm marketing quota is established for a farm, and * * * may not be assigned or otherwise transferred in whole or in part to any other farm.' As is evident throughout the Act and the regulations issued thereunder, acreage allotments are not established for individuals, but are established for a farm on the basis of the history of planted acreage on such farm. The construction argued for by the plaintiff seeks to establish

3. Wickard v. Filburn, 317 U.S. 111, 63 S. Ct. 82, 87 L.Ed. 122; Rodgers v. United States, 332 U.S. 371, 68 S.Ct. 5, 92 L. Ed. 3; Usher v. United States, 4 Cir., 146 F.2d 369; United States v. Bonderer, D.C.W.D.Mo., 139 F.Supp. 391, 395.

4. Edwards v. Owens, D.C.E.D.Mo., 137 F. Supp. 63, 65.

5. Lee v. Berry, 219 S.C. 346, 65 S.E.2d 257, 259; Luke v. Review Committee, D.C.W.D.La., 155 F.Supp. 719.

marketing quotas and acreage allotments for an individual, which is directly contrary to the specific provisions of the Act and regulations."

Our conclusion is that the attempt to buy and sell acreage of an allotment and move it from one farm to the other is not only invalid and contrary to the regulations governing operation of the Act, but also contrary to and destructive of the basic purpose of the Act.

The law favors compromise of doubtful claims, and forbearance may be a sufficient consideration for such compromise, even though the claim upon which it is based should develop to be ill-founded. The fact that, had the parties proceeded to litigate the claim, one of them would certainly have won, does not destroy the consideration for the compromise, for the consideration is said to be the settlement of the dispute.[6]

But there are certain essentials to the validity of such consideration. For one thing, and by all authority, the claim upon which the settlement is based must be one made in good faith. Of that there is no dispute in this case. Secondly, the claim must have *some* foundation. As to this

second consideration we find the courts using varying language. The claim cannot be "utterly baseless."[7] It has been said that it must have a "tenable ground"[8] or a "reasonable, tenable ground."[9] It must be based on a "colorable right,"[10] or on some "legal foundation."[11] It must have at least an appearance of right sufficient to raise a "possible doubt" in favor of the party asserting it.[12] This is the Missouri rule.[13]

It is difficult to reconcile the antinomous rules and statements which are applied to the "doubtful claims" and to find the words which will exactly draw the line between the compromise (on the one hand) of an honestly disputed claim which has some fair element of doubt and is therefore to be regarded as consideration and (on the other hand) a claim, though honestly made, which is so lacking in substance and virility as to be entirely baseless. The Missouri courts have struggled and not yet found apt language. We think we had best leave definitions alone, confident that, as applied to each individual case, the facts will make the thing apparent. But if we should make further effort to distinguish we would say that if the claimant, *in good faith*, makes a mountain out of a mole hill the claim

6. Corbin on Contracts, vol. 1, sec. 139, p. 431, sec. 140, p. 433; 11 Am.Jur., Compromise and Settlement, sec. 7, p. 253; 15 C.J.S. Compromise and Settlement § 11, p. 728, et seq.; State ex rel. St. Louis Shipbuilding & Steel Co. v. Smith, 356 Mo. 25, 201 S.W.2d 153; Weisert v. Bramman, 358 Mo. 636, 216 S.W.2d 430; Landers v. Fox, Mo.App., 209 S.W. 287.

7. Osborne v. Fridrich, 134 Mo.App. 449, 114 S.W. 1045, 1047.

8. Heck v. Watkins, Mo.App., 183 S.W. 351.

9. Deiss v. Kasselmann, Mo.App., 189 S.W. 824, 825.

10. Deiss v. Kasselmann, Mo.App., 189 S.W. 824; Holladay-Klotz Land & Lumber Co. v. Beekman Lumber Co., 136 Mo.App. 176, 116 S.W. 436.

11. Tegethoff v. Sidmon, Mo.App., 158 S.W. 2d 224.

12. Long v. Towl, 42 Mo. 545, 550, 97 Am.Dec. 355.

13. Although the law writers seem to make good faith alone the preponderant consideration. 11 Am.Jur., Compromise and Settlement, secs. 6 and 7, pp. 252, 253, says that the words "colorable," "plausible," et cetera, are mere catchwords underneath which lies the idea that the courts will not countenance extortion. 15 C.J.S. Compromise and Settlement § 11b, p. 732, states that the reality of the claim must be measured, not by the state of the law as it is ultimately discovered to be, but by the state of the knowledge of the person who at the time has to judge and make the concession. Professor Corbin (Corbin on Contracts, vol. 1, sec. 140, p. 436) states that the absence of reasonable ground for belief in validity is evidence of bad faith, but not conclusive.

is "doubtful." But if there is no discernible mole hill in the beginning, then the claim has no substance.

The very nature of a cotton acreage allotment is such that it has no existence except for the one specific year. It expires with the crop year. It is not continuous. The fact there may (or may not) be another allotment fixed for the next year carries no certainty that a successive allotment will be in the same amount or acreage. The cotton allotment acreage is not like an oak tree which continues in existence through the years and sends forth new leaves on the same branches with each successive spring. Rather it is like the bindweed which springs from seed, a new life with the coming of a new life-giving season—from seed which may or may not sprout, dependent upon conditions of sun, moisture, and a charitable soil, and which produces a plant only to die by the icy sword of frost when the season ends. So in this case the only possible allotment of a definite acreage applicable to the situation was that in existence for the contemplated crop year. None other existed. And there was no way under heaven the parties could be assured that any future allotment, if there was to be such, would be of the same acreage, any more than the proposed purchaser of public welfare relief checks could be assured by the recipient of such benefits that his welfare check would be in the same amount through the next year and from there on.

It would therefore appear that the only thing the parties were .contracting for, or could have contracted for, was the amount of acres (65) allotted for the ensuing crop year. The uncontradicted evidence is that

Black "made up" that acreage out of the acreage on his own (retained) land. Hence plaintiff got all he could possibly have bargained for, and his claim of the purchase of some nonexistent, ethereal future allotment stretching perhaps into eternity was baseless and did not rise to the dignity of consideration. It falls into the same category as a claim of purchase of the green cheese monopoly on the moon. Whether the parties actually knew they could not sell a future unfixed cotton allotment acreage off one farm and onto the other is not shown. No one testified that either of them knew, or did not know. But, be that as it may, the age-old legal fiction is that they did know the law, and this rule has been applied to the workings of the Agricultural Adjustment Act in relation to cotton allotments.[14]

■ But there is another and perhaps more potent reason why plaintiff cannot recover. The settlement of a claim based on a contract which is against public morals or public policy, or which is inherently illegal, or which is in direct violation of the statutes, cannot form the basis of consideration for a valid compromise settlement,[15] for the reason that " 'the wrong done is against the state, and the state only can forgive it. To permit the subsequent ratification of such contract, or to consider it the sufficient and legal basis of a subsequent promise, would be a manifest inconsistency. It would be to annul the rule and enable the parties, by an easy expedient, to evade laws based upon considerations of public policy.' "[16] The attempt here to transfer the allotment was the attempt to do that which was clearly contrary to and destructive of the Act and its workings. And, being illegal as such,

---

14. Edwards v. Owens, D.C.E.D.Mo., 137 F.Supp. 63, 68–69.

15. Parke, Davis & Co. v. Mullett, 245 Mo. 168, 149 S.W. 461; Bick v. Seal, 45 Mo. App. 475; Gwinn v. Simes, 61 Mo. 335; Isaacson v. Van Gundy, Mo.App., 48 S.W. 2d 208; Elmore-Schultz Grain Co. v. Stonebraker, 202 Mo.App. 81, 214 S.W.

216; Adams v. Cribbis, D.C.D.Colo., 17 F.Supp. 723; see 15 C.J.S. Compromise and Settlement § 36c, pp. 758–759.

16. State ex rel. Isaacson v. Trimble, 335 Mo. 213, 72 S.W.2d 111, 114; Gilbert v. Edwards, Mo.App., 276 S.W.2d 611, 619–620.

it did not constitute a consideration which the law can recognize. The court must leave the parties where it found them.[17]

■ The record shows no request for findings of fact or law, and none were given. It is our duty to review the case upon both the law and the evidence as in suits of an equitable nature. The judgment shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses.[18] The decision of the trial court is obviously based upon the fact there was no valid consideration for the note. It being so, we must affirm the judgment. It is so ordered.

STONE, P. J., and McDOWELL, J., concur.

17. Gilbert v. Edwards, Mo.App., 276 S.W. 2d 611, 619.

18. Section 510.310, RSMo 1949, V.A.M.S.; Pitts v. Garner, Mo., 321 S.W.2d 509; In re Kies' Estate, Mo., 320 S.W.2d 478.