**TOWN & COUNTRY SHOES FEDERAL CREDIT UNION, Appellant,**

v.

**James H. CRAMER and Lorraine Cramer, Respondents.**

No. 23318.

Kansas City Court of Appeals.

Missouri.

Oct. 2, 1961.

Harold W. Barrick, Sedalia, for appellant.

J. Marion Robertson, Marshall, for respondents.

HUNTER, Presiding Judge.

This is a suit for the unpaid balance on a promissory note for $2,363 by plaintiff-appellant Town & Country Shoes Federal Credit Union against defendants-respondents James H. Cramer and Lorraine Cramer. The case was tried to the court as jury waived. The testimony of the parties on the vital issues differed as will be indicated.

Harold W. Cramer, brother of defendant James H. Cramer, was endeavoring to obtain a loan from plaintiff credit union. The loan in the amount of $2,363 was obtained on February 3, 1956, and was evidenced by a promissory note in which plaintiff credit union was payee. It was signed by Harold W. Cramer and his wife as makers, and by James H. Cramer, Lorraine Cramer, Oliver P. Smith and Mrs. Roxie Smith. The evidence reveals that the latter four persons received nothing from the transaction, and were accommodation signers. As will be developed, a principal dispute is whether the defendants signed the note to accommodate the plaintiff or to accommodate Harold W. Cramer.

According to the testimony of defendant James H. Cramer corroborated in the main by his wife, plaintiff's agent and treasurer, James E. Anderson called him (James Cramer) on the telephone and asked him to sign the note. Defendant (James Cramer) told Anderson that he had been importuned by Harold to sign the note but that he had refused to do so because Harold "was poor pay, and that I didn't want to sign for that reason. * * *

"Q. And just what did he say? A. He told me that Harold was working for Town & Country, and that he had applied for this loan, and that he

would like to make the loan, in fact, he already had the checks made out to pay off the obligations Harold was getting the loan for. He said he had to get approval of the board, and that my signature was only to get the board to approve it, that I wasn't actually siging it to pay it in the event Harold didn't pay it.

"Q. And you signed the note for him, and not for your brother? A. That's right, because I had refused to sign it for my brother because I knew Harold was poor pay and I told Mr. Anderson that.

"Q. Did he call you again on a later note, the note that was sued on? A. Yes, he did; he told me Harold had some additional bills, but that he wanted again to make him a loan, to increase the note, and that the same signatures would be required to go before the board and the same procedure, and in both cases he sent Harold and his wife over with the papers and called me on the phone and gave me this information."

Although plaintiff does not cover the subject in its brief either in its statement of facts or argument, the transcript indicates the note in suit was actually a second note, signed by the defendants at plaintiff's request, and again according to defendants' evidence, to accommodate plaintiff, with the understanding between plaintiff and defendants that defendants would not be liable thereon. This second note was in the nature of a renewal of the earlier note and also for a small additional amount of money. Cf. Federal Chemical Co. v. Hitt, Mo.App., 155 S.W.2d 899, 902(11); Ford v. Ford Roofing Products Co., Mo.App., 285 S.W. 538(8, 9).

Later, according to James, Mr. Anderson advised him Harold had quit his job, "and that it would be necessary for me and Mr. Smith to make half-payments on the note. I think I called him and asked him why it was necessary for me to make

any payments when the agreement was I was signing it only as an accommodation to him (Anderson), and then he came to see me, and in the course of our visits he told me that all they ever expected me to pay was half of it, if I'd go ahead and pay half of it they wouldn't sue me. I told Mr. Anderson I didn't have half of the money, I would have to borrow it. He said, 'That's all right, just make half of the payments, that's all that will be necessary.' " Other testimony of defendants was to the same effect, i. e. that they believed they owed nothing as they had signed only to accommodate Mr. Anderson and his company but that to avoid litigation and further involvement they accepted Anderson's offer that if they made half payments until the note was half paid that would end any obligation on their part to the plaintiff. Anderson told them that he would look to the Smiths, who also had signed the note, for the other half of the amount.

It is undisputed that defendants did make the mentioned half-payments until the balance owed on the note was half paid, and it was their contention at the trial that having relied upon and completed their bargain with plaintiff they owed nothing further.

Mr. Anderson was asked if he, acting as agent for plaintiff, entered into an agreement with defendants to compromise their liability on the note at 50 per cent of the balance due. He replied, " * * * we received a proposition to that effect, but we did not accept it." He denied he had ever told defendants that they would not be liable for any payments on the note. It was his testimony that they signed it to help Harold Cramer and his wife, and not to accommodate plaintiff.

The trial court found the issues for the defendants on plaintiff's petition, and for plaintiff on defendants' counterclaim which we do not discuss as defendants have not appealed therefrom.

On this appeal plaintiff contends the trial court erred "because said holding

could only be based upon a finding that defendants were makers for the accommodation of plaintiff which is contrary to the facts and the evidence." While we have omitted many of the details we have set out above sufficient of the evidence to amply demonstrate that of the only three witnesses at the trial, two of them, Mr. and Mrs. James Cramer, testified that they signed solely to accommodate plaintiff on plaintiff's representation plaintiff would not request them to pay in the event of a default by the maker of the note. Only the testimony of Mr. Anderson was to the contrary, and the trial court apparently accepted defendants' testimony on this issue.

Civil Rule 73.01 provides in cases tried by the court without a jury, "The appellate court shall review the case upon both the law and the evidence as in suits of an equitable nature. The judgment shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." Upon our review of the evidence, and after giving due regard to the opportunity of the trial court to judge the credibility of the witnesses we have decided to accept defendants' factual version on the disputed accommodation issue.

■ It has long been the rule in this state, and elsewhere, that the party for whose benefit accommodation paper has been made acquires no right against, and is not entitled to successfully sue, the accommodation maker, and as long as the rights of no other party have become involved, the accommodation party may set up the want of consideration as a defense to an action by the accommodated party since there is no consideration as between them. 11 C.J.S. Bills and Notes § 746, pages 300–302; Federal Chemical Co. v. Hitt, Mo.App., 155 S.W.2d 899(1); Tressler v. Whitsett, 321 Mo. 849, 12 S.W.2d 723(3); Gillihan v. Assel, 239 Mo.App. 28, 186 S.W.2d 772(5); People's Bank of Glasgow v. Yager, Mo.App., 6 S.W.2d 633

(3); National Bank of Commerce in St. Louis v. Laughlin, 305 Mo. 8, 264 S.W. 706; Dickherber v. Turnbull, Mo.App., 31 S.W. 2d 234. We find no merit in plaintiff's first contention.

■ Plaintiff next contends the trial court's judgment "was contrary to the law and the evidence, because said defendants were primarily liable on said note under the applicable statutes. (Sections 401.016 and 401.029, R.S.Mo.1949 [V.A.M.S.].)" Plaintiff's brief fails to develop this contention. Certainly if plaintiff implies thereby that defendants had no evidence to support any defense to the note, we are unable to agree with such implication. The law recognizes that there may be a compromise and settlement of a disputed claim. See 11 Am.Jur., Compromise and Settlement, Sec. 3, page 248; Robinson v. Benefit Ass'n of Railway Employees, Mo.App., 183 S.W.2d 407 (2); Duncan v. Black, Mo.App., 324 S.W. 2d 483. According to the evidence defendants took the position that they owed plaintiff nothing on the note for the reason that they signed the note solely to accommodate plaintiff and that there was no consideration for the note as between them. Thereafter, according to defendants' evidence, they and plaintiff entered into an agreement that defendants would pay only one-half of what the note called for in settlement of any liability defendants might have under the note. This and other evidence fully supports a finding that plaintiff and defendants entered into a compromise settlement of plaintiff's claim on the note; that defendants have fully carried out the compromise settlement agreement, and that defendants owe plaintiff nothing.

The case of Central National Bank v. Walterscheid, 204 Mo.App. 179, 222 S.W. 912, concerned an action by a bank on a note claimed by the defendant maker to have been given for accommodation. The court held that evidence of a verbal understanding that the note was for the bank's accommodation and was not to be paid was

admissible, and, if believed, proved lack of consideration and was a complete defense between the original parties. See, also, Dickherber v. Turnbull, supra, 31 S.W.2d 234(2–3).

 Section 401.029, R.S.Mo.1949, V.A. M.S., mentioned by plaintiff, provides that an accommodation party is liable on the instrument to a holder for value. However, it is well settled that a payee is not a holder in due course for value as between himself and the accommodation maker or signer where the note was signed for the accommodation of the payee. See Dickherber v. Turnbull, supra, and cases cited above. Section 401.016, also cited by plaintiff, concerns delivery of a negotiable instrument and does not appear applicable to any contention of plaintiff on this appeal. Defendants do not question the delivery of the note.

The trial judge was not requested to make findings of fact or conclusions of law. His general finding for the defendants is supported by the evidence on both the grounds (1) that the note was given for plaintiff's accommodation, and thus there was no consideration as between defendants and plaintiff; and (2) that in any event plaintiff and defendants entered into a compromise and settlement agreement by the terms of which defendants have no further obligation to plaintiff.

On our own review of the evidence we have come to the same result as did the trial court. We not only do not think the judgment was clearly erroneous but rather we believe it to be for the party entitled to prevail under the law and the evidence. In so saying we acknowledge the correctness of plaintiff's suggestion that the burden of proof on affirmative defenses rests with the defendants. See Section 509.090 R.S.Mo. 1949, V.A.M.S.; Duncan v. Black, supra, 324 S.W.2d 483(1).

The defendants have filed a motion to dismiss plaintiff's appeal for failure to file a brief whose contents comply with the re-

quirements of Civil Rules 83.05(a) (3) and 83.05(e). We have taken that motion with the case, and now overrule it.

The judgment is affirmed.

All concur.