John **DICKEY**, Plaintiff,

v.

**THIRTY–THREE VENTURERS** et al., **Appellants,**

Cecil Van Tuyl, Respondent.

No. KCD 28127.

Missouri Court of Appeals, Kansas City District.

May 2, 1977.

George T. O'Laughlin, Miller & O'Laughlin, P. C., Kansas City, for intervenors Citizens Bank of Hopkins and Rudy Johnson; Larry E. Butcher, Kansas City, of counsel.

Harry A. Morris, Donald H. Loudon, Kansas City, for respondent; Morris, Larson, King, Stamper & Bold, Kansas City, of counsel.

Before SHANGLER, P. J., and WELBORN and HIGGINS, Special Judges.

SHANGLER, Presiding Judge.

This case involves an attempt by two banks, Citizens Bank of Hopkins and Citizens Bank of Brookfield [through Rudy Johnson, successor in interest and substitute party for Bank of Brookfield] to enforce guarantor liability assumed by appellant Cecil Van Tuyl by contract and his effort to avoid liability based on a later settlement agreement.

This appeal presents one aspect of a transaction by shareholders Van Tuyl, Dickey and others for the sale of five rural banks to Rudy Johnson and his five wholly-owned Venturers corporations.[1] The terms of the sale agreement, concluded separately on October 16, 1970, by each bank, rendered the sellers jointly and severally liable for these undertakings. The basic sales agreements were amended to require the sellers [in accordance with conditions set by the Federal Deposit Insurance Corporation] to collect certain specified loans owed the banks within 180 days after the closing of the agreements. In this manner Van Tuyl became the guarantor of a promissory note for $80,000 owed by seller Dickey to the Citizens Bank of Brookfield. It is this liability which is in contest on this appeal.

It became apparent to Johnson soon after the sales agreement that the bank loans would not be paid on time, so for himself and the Venturers corporations he notified the sellers of intention to exercise certain charge-back procedures allowed him by the sales agreement on such eventuality.

---

1. Citizens Bank of Hopkins was sold to Thirty-Three Venturers, Inc. Bank of Craig was sold to Thirty-Four Venturers, Inc. Harris Banking Company was sold to Thirty-Five Venturers, Inc. Bank of Otterville was sold to Thirty-Six Venturers, Inc. Citizens Bank of Brookfield was sold to Thirty-Seven Venturers, Inc.

There followed a declaratory judgment action by seller Dickey against the five Venturers corporations for declaration of the obligations of the parties—as to payment of interest, charge-backs and other matters—under the terms of the October 16, 1971, sales agreements. Two of the Venturers corporations [Thirty-Three Venturers, purchaser of the Hopkins Bank, and Thirty-Seven Venturers, purchaser of the Brookfield Bank] counterclaimed against seller Dickey and joined Van Tuyl and the other sellers to enforce their guaranty liability for loans owed the banks. Rudy Johnson [as successor in interest of the Brookfield Bank] brought a petition in intervention against all the sellers, including Van Tuyl, to enforce their guaranty of the $80,000 promissory note owed by seller Dickey to the Brookfield Bank.[2]

These disputes brought all the principals [the sellers, Venturers corporations, Johnson and the banks] to conclude a settlement agreement on December 15, 1971, designed to allow completion of the sales transactions. The agreement provided for Van Tuyl to release any claim of lien to Brookfield Bank stock so that it might be sold to a third party, for the mutual release of claims among all the principals, the payment of certain obligations [which included the $80,000 Dickey note to the Brookfield Bank] and the dismissal with prejudice of all pending actions.

On the basis of these recitals, Van Tuyl moved dismissal with prejudice of the Venturers counterclaims and the Brookfield Bank intervention against him. The dismissal motion was sustained on May 8, 1972, by Judge J. D. Murphy before whom the declaratory judgment action then pended. That judgment became final for appeal on June 27, 1975, after the other claims of the declaratory judgment action were determined. It is this May 8, 1972, judgment of dismissal for Van Tuyl which intervenor Brookfield Bank now appeals to us.[3]

After the Van Tuyl motion to dismiss was filed, but before the order of dismissal was entered, Van Tuyl and the other sellers sued for specific performance of the settlement agreement.[4] The defendants Johnson and his Venturers corporations counterclaimed for a declaration that the settlement agreement was void and unenforceable on grounds that the compromise was the result of economic duress practiced upon them by the sellers and was on matters not in good faith dispute. The trial court declared the settlement agreement void and unenforceable and the sales agreements in full force and effect, denied specific performance of the settlement agreement and awarded defendants actual and punitive damages on their counterclaims.

The judgment which denied specific performance and assessed damages was appealed by the sellers in March of 1974. While that appeal pended, the separate declaratory judgment which sought the definition of the sales agreements went to suit and [along with the dismissal of the Brookfield Bank-Johnson counterclaim against Van Tuyl entered in May of 1972] became final for purposes of review in June of 1975.

We have described the anomaly of these two parallel litigations—one for declaratory judgment and the other for specific per-

2. The intervention pleading was actually a joint petition by the Brookfield Bank and the Hopkins Bank. The latter intervenor sought to enforce the $100,000 promissory note liability of seller Dickey against all the other sellers, except—for some reason—Van Tuyl. That action does not bear on this appeal.

3. This opinion will use the term *counterclaims* to include the petitions for intervention by Hopkins Bank and Brookfield Bank-Johnson dismissed by the order of Judge Murphy. Only the dismissal of the intervention petition by Brookfield Bank-Johnson remains in issue on this appeal.

4. The petition for specific performance was commenced and tolerated as a proceeding independent of the declaratory judgment action although both proceedings arise from the same transaction, affect the same parties and involve common questions of fact and law. Counterclaim Rule 55.32 and consolidation of civil actions Rule 66.01 were designed to reduce such litigations to a single procedure.

formance—which spring from a common transaction among the same parties but brought separately, because the focus of both actions converges on the validity of the settlement agreement.

This uncommon procedure has brought for our appellate review first, although filed last, the specific performance litigation. That appeal was decided in *Dickey v. Johnson*, 532 S.W.2d 487 (Mo.App.1976). The dismissal of the Brookfield Bank-Johnson counterclaim against Van Tuyl in the declaratory judgment action, brought and determined first, finally comes for our appellate determination. The essential unity of both litigations is recognized in *Dickey*, and it is within that matrix we consider and decide this appeal. That is because the settlement agreement Van Tuyl and the other sellers sought to specifically enforce recited as one consideration the dismissal of the declaratory judgment action counterclaims then pending against them.

*Dickey* found [l.c. 498 and 501] that the declaratory judgment action on the sales agreements was a sham because there was no good faith dispute among the parties as to those undertakings, so that the settlement agreement was without consideration on that ground. *Dickey* found also [l.c. 499] the other recited support for the settlement agreement—that Van Tuyl and other sellers released their claims of lien to the Brookfield Bank shares to allow sale to a third party—was neither loss to the sellers nor consideration to the buyers to forbear from their declaratory judgment action counterclaims, simply because the sellers then had no liens to relinquish. In these express terms, *Dickey* decided there was no good faith dispute as to any matter between the parties and refused to order specific performance of a settlement agreement not grounded on consideration.[5] That is to say, the sellers without legitimate reason simply failed to perform the clear obligations of the sales agreements.

We now must determine how the *Dickey* denial of specific performance bears on the issue on this appeal: the validity of the judgment entered by Judge Murphy in May of 1972 which dismissed the Brookfield-Johnson declaratory judgment action counterclaim against Van Tuyl and so gave effect to the settlement agreement.

■ The parties agree that *Dickey* finds no good faith dispute in the allegations of the declaratory judgment action and so refuses specific performance of the settlement agreement on that recited consideration. The parties disagree, however, as to the legal effect to be accorded this rationale. Brookfield Bank-Johnson argues that *Dickey* conclusively determines the invalidity of the settlement agreement and so invalidates the Judge Murphy order of dismissal on principles of res judicata and estoppel. Van Tuyl does not challenge that *Dickey* was a final judgment between the same parties on a different cause of action, but argues that the decision to withhold specific performance of the settlement agreement was not also a determination that the compromise was of no effect. Van Tuyl argues thereby that the denial of specific performance did not rescind the settlement contract but was merely expression that the contract should not be enforced at equity. It does not follow, he continues, that the contract has no validity at law: only the enforceability, not the legal validity, of the contract was concluded against Van Tuyl by *Dickey*, so the settlement agreement to discontinue the counterclaims remains effective against Brookfield Bank-Johnson and the dismissal entered by Judge Murphy was a proper judgment.

This argument springs from a faulty premise. The logic of *Dickey* which predetermines this appeal is not the refusal to specifically enforce the settlement agreement, but that the absence of a good faith

---

5. The court denied specific performance of the settlement agreement against some of the sellers [but not Van Tuyl] for the additional reason that they conspired to hinder Johnson and his Venturers corporations by economic duress from performance under the sales agreements. This evidence was also the basis for the return of actual and punitive damages against the culpable sellers.

dispute deprived the compromise of any validity. The opinion denies specific performance not only because the sellers [but not Van Tuyl] conspired to work a financial hardship on Brookfield Bank-Johnson, but also because there was no colorable controversy among them [including Van Tuyl] and so no agreement subject to specific enforcement.[6]

A compromise or settlement agreement is a distinctive species of contract, distinguished in each case by a forbearance to press a claim or the promise of such a forbearance. Corbin on Contracts, Vol. 1, § 140, p. 605. The existence of a bona fide dispute is an essential element of all valid compromise agreements. *Holladay-Klotz Land and Lumber Co. v. Beekman Lumber Co.,* 136 Mo.App. 176, 116 S.W. 436, 437 (Mo.App.1909); 15A C.J.S. Compromise and Settlement § 2, p. 173. As in all contracts, consideration is the quiddity which binds the parties, and may take the form of a relinquishment of the right to sue on a disputed or doubtful claim. *Landers v. Fox,* 209 S.W. 287, 288 (Mo.App.1919); 15A C.J.S. Compromise and Settlement § 9, p. 197. *Dickey* has determined that the declaratory judgment action was not on a good faith dispute so the sellers [including Van Tuyl] gave up no claim by the dismissal of that action. Consequently, there was no consideration for the settlement agreement on that ground.

That ruling binds the question here on principles of estoppel by verdict whereby a judgment between the same parties in different causes of actions concludes them as to facts—ultimate or supportive—necessarily determined in the rendition of judgment. *Abeles v. Wurdack,* 285 S.W.2d 544, 546–547[1–3] (Mo.1955); *Smith v. Preis,* 396 S.W.2d 636, 640[4–7] (Mo.1965). Here there is a judgment—the denial of specific performance—between Van Tuyl and Brookfield Bank-Johnson, the same parties as on this appeal. And there is a fact—the absence of good faith dispute—an express ground for denial of specific performance of the settlement agreement. That finding of fact binds the parties here and the judgment which rests on that fact estops Van Tuyl from assertion of the contrary fact— the existence of a good faith dispute as consideration for the settlement agreement. *Stickle v. Link,* 511 S.W.2d 848, 855[4] (Mo. 1974).

The parties are also bound on the more general principle of issue preclusion. The judgment of dismissal of the counterclaim, on appeal here, assumes the settlement agreement was a valid compromise of the sales agreements; that is, that there was consideration. That issue of mixed fact and law is also precluded by the specific performance judgment on the general rule of Restatement of the Law, Second, Judgments, Tentative Draft No. 1 (1973), § 68 Issue Preclusion:

> When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, *the determination is conclusive in a subsequent action between the parties, whether on the same or different claim.* (Emphasis supplied.)

---

**6.** Van Tuyl points to the recitation of his testimony in the *Dickey* opinion [l.c. 503]—"[Van Tuyl] thought that Johnson signed the December 15, 1971, [settlement] agreement because he was paying less money for the banks than he was obligated to do under the original sales agreements"—to establish consideration and his good faith for the settlement agreement. That recital merely describes his evidence and not the evaluation of the court as to its verity. The opinion clearly shows, however, that because Van Tuyl was not proved to be a conspirator against Brookfield Bank-Johnson, he was relieved of the damage award against him on that theory. The opinion shows just as clearly, however, that [l.c. 498[5]]: "Assuming for the purpose of their [including Van Tuyl] attempting to show that real disputes existed, the declaratory judgment suit . . . avails them nothing to aid their plea for specific performance of the December 15, 1971, agreement. All that appears with respect to the time of filing of the declaratory judgment suit under the evidence and a fair construction of the bank sales, is that appellants [including Van Tuyl], without any legitimate reason failed to perform their clear contractual obligations. There is lacking a bona fide dispute, and in that aspect there is no consideration for the December 15, 1971, agreement."

See, particularly, Comment and Illustration 1 to § 68.

A compromise agreement without consideration becomes a nullity. *Tegethoff v. Sidmon,* 158 S.W.2d 224, 228 (Mo.App. 1942); 15 Am.Jur.2d Compromise and Settlement, § 37, p. 800. The effect of the invalidation is to restore the parties to their antecedent positions. The nullification of the settlement agreement by *Dickey* placed the parties *in statu quo,* that is, in the posture of the sales agreements. Accordingly, the Brookfield Bank-Johnson intervention petition to enforce an $80,000 note obligation from Dickey to Brookfield Bank against Van Tuyl as guarantor of that liability under the sales agreement remains alive.

Accordingly, the cause is reversed and remanded to the trial court with directions to set aside the order of dismissal and to determine the intervention petition of Johnson as successor in interest to the Brookfield Bank.

All concur.