137 F.Supp. 63 (1955)
John H. EDWARDS, Trustee, Plaintiff,
v.
John R. OWENS et al., Review Committee, Defendants.
No. 1766.
United States District Court E. D. Missouri, Southeastern D.
December 16, 1955.
*64 Edward F. Sharp, New Madrid, Mo., for plaintiff.
Harry Richards, U. S. Atty., and Robert E. Brauer, Asst. U. S. Atty., St. Louis, Mo., for defendants.
HULEN, District Judge.
No issue of fact is raised by the pleadings in this case. We have for ruling a question of law raised by a two count petition, or "bill in equity", and answer, in a proceeding under the "Agricultural Adjustment Act" of 1938. See Chapter 35, Section 1365, Title 7, U.S.C.A.
Plaintiff owns and operates two tracts of land in New Madrid County, Missouri. Defendants are members of the review committee, § 1363, provided in the Act. By each count of the petition plaintiff seeks a cotton acreage allotment under § 1344(e) or (f) of the Act. The suit was initiated in the state court and removed in due course. On the first hearing in this court the cause was remanded to the county review committee to make findings of fact, § 1366. This has now been done.
The first count of the petition concerns a tract of land never planted to cotton. It is land cleared in 1953. Count two refers to a tract part of which has had an allotment, or 10.5 acres, and which during 1953 had an additional 100 acres cleared. Plaintiff duly submitted each tract to the county committee, § 1344(f) (3), as the basis of a request for additional allotment of cotton acreage.
Under Count one of the petition pertinent findings of the review committee are:
9. The County Committee refused to allot this farm any acreage for planting to cotton for the crop year 1955 because the applicant is the owner of another farm in New Madrid County, to which a cotton allotment for the crop year 1955 has been given by the County Committee.
10. That 218 acres was allocated to New Madrid County by the State committee from its reserve for the purpose of allocation, by the County Committee, to qualified new farms in New Madrid County; that this allotment of 218 acres was allotted, by the County Committee, to qualified new farms;
11. That this farm is a new cotton farm under the Regulations, but is not a qualified new cotton farm, under the Regulations, for the purpose of allocating to it acreage for planting to cotton, out of the County reserve.
12. That the applicant is the owner of another farm in New Madrid County which has been given an acreage allotment for planting to cotton for the crop year 1955.
Plaintiff admits the findings of the county committee "did follow the regulations" issued by the Secretary of Agriculture, as provided in the Act. Plaintiff's position is that the regulations are in conflict with the Act.
On Count one the following regulations regarding the eligibility of a new cotton farm for a cotton acreage allotment (§ 722.617(c) (3) (ii), November 2, 1954) are declared to be in conflict with the Act.
"(B) The farm operator is largely dependent on income from the farm for his livelihood.
"(C) The farm is the only farm in the county which is owned or operated by the farm operator or farm owner for which a cotton acreage allotment is established for 1955."
Plaintiff admits he is not eligible for an allotment if either of the regulations are valid. His position is:
"* * * the act provides (Section 1344(c)) where the county committee sets aside a reserve that which in addition to the acreage made available under proviso in Sub-section (e) `shall be used for (A) establishing allotments for farm on which cotton was not planted * * * during any of the three calendar years preceding the year for which the allotment is *65 made, etc.' and again nothing is said in the law limiting its application to persons dependent on the income of the farm for their livelihood and again we respectfully submit that under the law it was the duty of the county committee to set an allotment for this new farm mentioned in Count 1 of the petition and that action of the county committee, later affirmed by the Review Committee, was illegal and contrary to the law although the County Committee did follow the regulation No. 722.617 (3), (ii)."
Plaintiff frankly states in his brief:
"The intent and purpose of the act was to restrict the acreage planted in cotton in order to reduce the National supply." (See §§ 1342, 1343 and 1344 of Act.)
With this concession plaintiff has weakened his position. In effect he admits the regulations of the Secretary and the action of the county committee are in accord with the intent and purpose of the Act.
If this plaintiff by clearing new land (Count one) or making new acreage available on a cotton-producing farm (Count two) can demand and receive as a matter of right increased cotton acreage allotments, then the acreage planted to cotton is not being "restricted" but increased. Such increase can be avoided, of course, if the allotments of other producers are reduced.
The Secretary of Agriculture has been given broad and important powers under the Act. A law of such general nature and purpose could hardly be framed and operate without some delegation of authority. The initiative for putting the law into effect is placed in the determination of the Secretary of Agriculture. § 1342. Controlling excessive supplies of cotton is the prime purpose of the Act. § 1341. After a determination by the Secretary of the quota for the following year, on the basis of national acreage, § 1344(a), then an acreage apportionment is made to each state, § 1344 (c), and in turn the state acreage is allotted to the various counties, § 1344(e), and finally acreage is allotted to individual farms, § 1344(f). The Act provides a "basis" for consideration of application for acreage of new farms (Count one), § 1344(f) (3), and trends in acreage (Count two) § 1344(e). Such is the plan in general, with the farm as the final objective. Unless the purposes of the Act can be carried out at the farm level it fails. Recognizing the enormity of administering such a program as is presented by the law and the necessity of extensive rules to carry its purpose into effect, Congress provided the "Secretary shall prescribe such regulations as are necessary for enforcement of" the Act. § 1375(b).
Passing from the general purpose of the Act, the necessity for regulations and authority for the Secretary to prescribe them, we compare the findings in this case with the regulations and the statute under which the Secretary and the committee acted. We do so aware of the law that regulations issued under a claimed authority and pursuant to law carry with them a strong presumption of validity. The Court of Appeals for this Circuit quoted, in Hart-Bartlett-Sturtevant Grain Co. v. C. I. R., 8 Cir., 182 F.2d 153, 158, a ruling by the Supreme Court:
"In Commissioner [of Internal Revenue] v. South Texas Lumber Co., supra, 333 U.S. [496] at page 501, 68 S.Ct. [695] at page 698, 92 L.Ed. 831, the court stated: `This Court has many times declared that Treasury regulations must be sustained unless unreasonable and plainly inconsistent with the revenue statutes and that they constitute contemporaneous constructions by those charged with administration of these statutes which should not be overruled except for weighty reasons.'"
At the outset we are reminded that the county committee, which is composed of laymen, must act under a law *66 that is far from simple in its terms. The regulations are as technical, if not more technical, in detail than the Act. Nonetheless, the plaintiff carries the burden of demonstrating that the findings of the county committee have no basis in the law or regulations which are valid under the law.
Authority for the committee's finding must rest in Section 1344(e) or 1344 (f) (3) of the Act. These sections provide that the county committee may reserve not in excess of 15 per cent of its county allotment, together with not to exceed 10 per cent of the county allotment reserved and credited to the county by the state, and this combined allotment "shall" be used for certain purposes:
1. Adjustments for trends in acreage.
2. Allotments for small or new farms.
3. Correct inequities in farm allotments.
4. Prevent hardship.
5. Allotments for farms on which cotton was not planted during the preceding three years.
6. Making adjustment on small farms.
In this case we have a county which for the year in question had both the state and county committee reserves.
As to the tract described in Count one, because the plaintiff was the owner of another farm in the same county to which an allotment had been made, no allotment was made on a finding that the farm did not qualify as a "new cotton farm." There is no dispute that the tract of land described in Count one comes within the term "new farm." Plaintiff claims the committee was bound to make an allotment for the acreage. The law contains certain conditions for making allotments to such farms. While the law does not say that the county committee shall be the judges as to whether or not the farm meets the conditions, the conclusion is manifest that the county committee shall act in this regard. Allotments in such cases under the law shall be 
"on the basis of land, labor, and equipment available for the production of cotton, crop-rotation practices, and the soil and other physical facilities affecting the production of cotton".
The findings of the county committee leave much to be desired. But we take note we are dealing with documents prepared by laymen trying to follow a law and regulations written by highly trained lawyers. It is plain that an allotment was denied plaintiff on the land described in Count one of the petition because he was the owner of another farm in the same county having a cotton allotment for the year in question. The committee, which relied upon the regulation for their action, can find authority in the Act upon a consideration of the language "land * * * for production of cotton", which is listed under the "basis" for cotton allotment to lands of the classification listed in Count one. There is further justification for the regulation and finding in the Act  "on the basis of * * * [a consideration of] labor * * * for production of cotton."
While the committee did not in its findings in exact terms say that if an allotment was given to land on which no cotton had been produced for three years, cotton production on "land" would be increased and "labor" requirements would be increased. Such would certainly be the results of granting plaintiff's request without an adjustment down of the acreage allotted other farmers.
If plaintiff submits subsection (e) of Section 1344 as a base for his demand, we find the county committee is given under this subsection a number of uses to which the reserve received from the state may be put. There is implicit in the Act a grant of power to the county committee to determine which of the classes named shall be recognized in using *67 the reserve. We make these observations, not as a justification of the committee's act, but as a reasonable and equitable exercise of power under subsection (e) of Section 1344. No such issue is here presented. Use of the word "shall" in both subsection (e) and (f) (3) of Section 1344 of the Act is claimed by plaintiff to require the Act be interpreted so that the county committee is bound to make an allotment on a showing solely of new cleared land. Use of the words "or" in subsection (e) and "basis" in subsection (f) (3), or use of the phrases "so as to establish allotments which are fair and reasonable" and "correct inequities and to prevent hardship" in the latter subsection evidence the error of plaintiff's position.
Finding number 10 is to the effect that the acreage reserve received from the state for qualified "new farm" has all been allocated to qualified "new farms." The county committee has been given standards by which to determine the farms to which the reserve shall be allocated. There is no claim that the county committee abused their discretion.
To hold, as plaintiff contends, that the county committee was bound to make an allotment to the new land would render inoperative the provisions of the Act providing a "basis" for allotment to land, such as described in Count one. It would make the landowner and not the committee the judge as to whether a farm qualifies on the base provided. Let that practice become established and the entire program falls of its own weight.
The findings of the county committee are in accord with the regulations, but absent regulations the findings still are in accord with the Act.
The committee was acting within its jurisdiction when it passed judgment and found the land described in Count one was not "qualified" for an allotment for the reason set out in its findings.
Under Count two the committee found:
2. Prior to 1953, the total cropland acreage of this farm was less than 150 acres. This farm was first cleared in 1938. Between 1938 and 1953, partial clearance occurred at intervals. Substantial clearing of this farm occurred in 1953, bringing the total cropland acreage to 150 acres.
8. The average number of acres planted to cotton on this farm during the years 1952, 1953 and 1954, is 7.0 acres.
11. The County Committee allotted 10.5 acres to this farm for planting to cotton for the cotton crop year 1955.
12. The County Committee set aside 14,305 acres for its reserve for all adjustments in the indicated acreage allotment for farms in New Madrid County.
13. Some of this 14,305 acres was used by the County Committee for adjustments for 5 to 15 acre farms; some of it was used for corrections, lates, reconstitutions and late hardship cases; some of it was used by the County Committee for hardship cases after determining the original allotments. All of the acres in the Reserve were allotted by the County Committee.
14. The County Committee did not allocate to this farm any acres for planting to cotton during the crop year 1955 out of the reserve of 14,305 acres.
15. No evidence was presented to this Review Committee which showed that the County Committee did not follow the Act and the Regulations in refusing to allot to this farm any more than 10.5 acres for planting to cotton for the crop year 1955.
16. The County Committee's allotment of 10.5 acres to this farm for the cotton crop year 1955 *68 is the maximum number of acres to which this farm is entitled.
Count two deals with a tract of land that had a cotton allotment. Additional acreage was cleared by the end of 1953. The allotment prior to 1955 was 10.5 acres. Plaintiff claims because of additional clearing he is entitled to over three times the 10.5 acre allotment. The only reason for such additional allotment given by plaintiff is that the cleared land is available for cotton.
The findings are that all of the county acreage reserve allotment has been used by allocation to farms coming under one or more of the six headings set out above. There is no claim of abuse of discretion by the county committees in making the allotment of acreage reserve out of which an allotment is demanded for the land described in Count two.
Count two is presented by plaintiff as an issue, substantially in the following terms:
"* * * under the law, this farm with its increased cultivated acreage is entitled to the same percentage of this total acreage to be planted in cotton as is given to other farms in the county."
"* * * Congress, when using the words `trends in acreage' definitely referred to the total cultivated acreage on the farm. Therefore, under Count II, to compensate for the newly cleared land because of the Congressional directive relative to the acreage trends this farm was entitled to the 37.5 acres allotment as applied for. Prior to 1951 a small acreage was in cultivation to which it was allotted for 1954 and 1955 an allotment on historical basis of 10.5 acres. Then an additional 100 acres or more was reduced to cultivation and the allotment authorities refused to grant the increase applied for."
Any rights to which plaintiff is entitled must be accorded every other producer, under like circumstances. This is not a theoretical figment of the imagination. Plaintiff has informed the Court this suit is in fact a test suit and that a large tract of land in Southeast Missouri has been made available for cotton by construction of a levee and the owners of various tracts are awaiting the outcome of this suit to determine whether to apply for cotton acreage allotments.
Plaintiff closes his brief:
"* * * if we cannot have additional allotments of cotton because of additional clearing on old farms then it means that it would be of no need for much of any reserves and, on that theory, thousands and thousands of acres of newly cleared land in 1956 can have no cotton allotment and the man who increased his acreage by clearing land would be penalized for his progressive enterprise."
This argument ignores the admitted purpose of the Act to control and reduce acreage planted to cotton. Acreage cannot be reduced by granting allotments to "thousands and thousands of acres of newly cleared land in 1956," unless you penalize the farmer and farm that is already planted to cotton by reducing its acreage to balance the allotment to the newly cleared "thousands of acres." Here it appears from the findings that to increase plaintiff's allotment would have meant to take acreage allotment from those farmers and farms requiring increased allotments to "adjust of 5 to 15 acre farms""corrections of late hardship cases," etc. All such cases come within the orbit of the committee's jurisdiction. The conclusion is apparent  the county committee considered the uses to which the reserve was devoted more equitable under the Act and regulations than plaintiff's request.
Plaintiff, and all others so situated, who contemplate the clearing of the land and the planting of cotton thereon, do so with notice that the Agricultural Adjustment *69 Act is on the statute books. They are charged with knowledge that the farmers who have a present history of producing cotton, can for the producing year of 1950 and thereafter, by a two-thirds majority, § 1343, bring the allotment feature of the Act into effect, with the result that new land, which is submitted for a cotton allotment, will be subject to the jurisdiction of the county committee. The county committee shall decide whether such new land or "new farms", which shall be considered with the other farms that seek allotments out of the same reserve under different circumstances and conditions, will receive any allotment from the reserve acreage.
The Agricultural Adjustment Act is intricate and complicated. It was conceived to alleviate, if not solve, a depressed economic condition of the cotton farmers, caused by excessive cotton production. Its consequence may bear unevenly on some of those engaged in the production or desiring to enter the production of cotton. There is a large measure of control of privately owned land by Government agents in the Act. This generates resistance when the individual is prevented from using his land for any purposes he desires. Such controls are inevitable in any law having for its purpose a reduction in production on the farm. Constitutionality of the Act is not questioned. Plaintiff would share in whatever monetary income the allotment plan produces for him. At the same time he would escape the hardship of the controls. The two are not separable.
The county committee had jurisdiction to make the finding complained of in Count two of the petition.
The regulations under which the county committee acted in refusing an allotment to the land described in Count two are authorized under the Act.
Plaintiff has failed to establish that the finding of the county committee, complained of in Counts one and two of the petition, are not in accord with the regulations and the law.