21032. BALKCOM *et al.* v. CROSS *et al.*

SUBMITTED OCTOBER 10, 1960—DECIDED JANUARY 5, 1961.

*Frank O. Evans, Earle B. May, Jr., Linton B. West,* for plaintiffs in error.

*Ray Y. Cross,* contra.

QUILLIAN, Justice. This case comes to this court on certiorari to the Court of Appeals in the case of *Cross v. Balkcom,* 102 Ga. App. 81 (115 S. E. 2d 783). In reversing the judgment of the Superior Court of Lee County, in which it had affirmed the

judgment of the Review Committee in its affirmance of the action of the Agricultural Stabilization and Conservation Committee of Lee County in applying the 1959 regulations for crop-allotment purposes, instead of 1957 regulations for crop-allotment purposes in reconstituting into two farms a farm which had been combined into one farm from two farms in 1957, the Court of Appeals ruled: "Since the 1958 changes in the allotment regulations [governing 1959 crops] have been applied so as to affect transactions which occurred or rights which accrued before they became operative, and ascribe to them essentially different effects, in view of the regulations at the time of their occurrence, they are retroactive in operation and must be judged accordingly. . . It is therefore the decision of this court that the rights of the plaintiffs to divide the allotment quotas of the farms in question upon reconstitution are determinable under the provisions of the regulations in effect at the time of the combination of said farms in 1957." *Held:*

1. The purpose and general scheme of the Agricultural Adjustment Act of 1938, as amended (52 Stat. 31, as amended, 7 U. S. C. A. 1281 et seq.), is to accomplish a national public benefit in controlling surpluses and consequent abnormal prices by limiting production of enumerated agricultural crops. It is the declared congressional policy (Section 1 (a) and (b) of Act of July 3, 1948, c. 827, Title I, 62 Stat. 1247, as amended June 10, 1949, c. 191, 63 Stat. 169) that farmers and landowners participate in the program and comply with the applicable regulations issued by the Secretary of Agriculture as a condition to their eligibility for price support, soil-conservation payments, and certain loans. By the terms of the Agricultural Adjustment Act it is provided that the Secretary of Agriculture shall fix and proclaim a national quota of enumerated agricultural crops for each marketing year; this is to be submitted to a referendum, and if a majority of the farmers surrender a portion of their liberty in this respect, the Secretary then imposes a national allotment for the enumerated crops to be produced during the next calendar year. This allotment is thereafter apportioned among the States, and the State allotments are in turn apportioned among the counties, and the county allotment is in turn ap-

portioned, by local committees, among the individual farms (Duncan v. Black, Mo. App., 324 S. W. 2d 483) ; and, to effectuate this purpose, the Secretary of Agriculture is empowered by the act and acts supplementary thereto, within prescribed limits and by prescribed standards, to formulate and promulgate rules and regulations. Wickard v. Filburn, 317 U. S. 111 (63 S. Ct. 82, 87 L. Ed. 122) ; Edwards v. Owens, 137 F. Supp. 63, 65. These rules and regulations have the force and effect of law. Caha v. United States, 152 U. S. 211 (14 S. Ct. 513, 517, 38 L. Ed. 415). They are presumptively valid (Edwards v. Owens, 137 F. Supp. 63, supra), and are to be judicially noticed. Lilly v. Grand Trunk Western R. Co., 317 U. S. 481 (63 S. Ct. 347, 87 L. Ed. 411) ; and see 7 U. S. C. A. 1375 (b).

2. To administer such an allotment program so as to effectuate the announced plan, purpose, and policy of the congressional enactments, the Secretary of Agriculture, charged with stabilizing prices and preventing surpluses from year to year, but faced with the manifold variables, contingencies, and intricacies of farming and of marketing farm products, is inevitably reduced to the expediency of formulating rules and regulations, which, if not entirely labile, are transitory in nature, but of uniform operation throughout the United States. There must be almost constant change and revision of the regulations in order to meet the exigencies of the day. This is made clear in the regulations covering allotments, where it is stated that the regulations shall apply and remain in effect until "amended, superseded or cancelled." See, for example, the regulations covering peanut allotments (Title 7, § 729.810, Federal Register of Friday, November 30, 1956, 21 F. R. 232, pp. 9365 et seq.).

3. These allotments of the enumerated crops are not made to the individual farmers and landowners as such, but are assigned by the local committees to the land or lands coming within the regulatory definition of a farm or farms, and the allotments are neither assignable nor transferable by the farmer or landowner except in those instances for which provision is expressly made in the regulations. Duncan v. Black (324 S. W. 2d 483), supra; Luke v. Review Committee, 155 F. Supp. 719; Mace v. Berry, 225 S. C. 160 (81 S. E. 2d 276). The very

nature of an acreage allotment of the enumerated crops is such that it has no existence except for one specific year (Duncan v. Black, supra; Luke v. Review Committee, supra), and the idea that the farmers and landowners participating in the program acquire by such participation any vested right in the ordinary sense to the allotments themselves, or to have the rules and regulations remain static or to be continued beyond the year for which promulgated, is clearly contrary to and destructive of the act and its workings. Duncan v. Black, supra; Lee v. Berry, 219 S. C. 346 (65 S. E. 2d 257, 259); and, see generally, United States v. Shafer, 132 F. Supp. 659, 229 F. 2d 124; Rodgers v. United States, 332 U. S. 371 (68 S. Ct. 5, 92 L. Ed. 3).

4. The Court of Appeals has held in effect that, by combining his two farms into one in 1957, the landowner acquired a right under the existing regulations (Title 7, § 729.810 et seq., Federal Register, November 30, 1956, 21 F. R. 232, pp. 9370 et seq.) to divide the one farm back into the two farms at any time within three years *thereafter* on a *contribution* rather than a *cropland* basis, and that the regulations promulgated for 1959 crop allotments (Title 7, 719.1 et seq., Federal Register, August 30, 1958, 23 F. R. 171, pp. 6731 et seq.), deprived him of such acquired or vested right. In this the Court of Appeals erred. While counsel for the Department of Agriculture seem to have conceded to the landowner's contention that, by combining his farms in 1957, the landowner acquired the right under the then existing regulations to divide his farms at any time within three years thereafter, we find no basis for such concession by counsel nor the decision by the Court of Appeals in the applicable regulations, which are controlling in spite of any stipulation or concession by counsel. By the terms of section 729.820, lands could be combined or divided for purposes of crop allotments which came within the definition of a farm contained in section 729.810 (n): " 'Farm' means all adjacent or nearby farmland under the same ownership which is operated by one person, including also (1) any other adjacent or nearby farmland which the county committee determines is operated by the same person as part of the same unit with respect to the rotation of crops and with workstock, farm machinery, and labor

substantially separate from that of any other lands; and (2) A field-rented tract (whether operated by the same or another person) which, together with any other land included in the farm, constitutes a unit with respect to the rotation of crops." While it is provided in section 729.820 (a) that, "if the farm to be divided for the current year consists of two or more tracts which were separate and distinct farms before combined for any year of the base period ["base period means the three calendar years immediately *preceding* the year for which farm allotments are currently being established," § 729.810 (c)], the allotment shall "be apportioned among the tracts in the same proportion that each contributed to the farm allotment for the year for which combined." These regulations established no right of division upon such basis as to those farms combined in 1957, and this method of dividing, during 1957, those farms which had been combined in the base period, 1954, 1955, and 1956, was not acquired as a vested right for having combined during those years. These were mere administrative matters, and were not offered as a consideration to farms to combine. These regulations continued in effect during 1958, and the base period for that year consisted of the years 1955, 1956, and 1957; and had the landowner chosen to divide in 1958 the farms which he had combined in 1957, he would have been permitted to do so—not as a matter of right but as a matter of regulation. The regulations were changed in 1958, but, in view of the fact that this court is called on only to pass on the sole question raised by the petition for certiorari, namely, whether the landowner acquired any vested right under the regulations of 1957 to divide his lands on a contribution basis, which we have answered in the negative, we make no comment on the effect of the rules adopted in 1958 for the 1959 crop year. See, in this connection, *Siegel v. State,* 206 Ga. 252 (56 S. E. 2d 512); *Southern Railway Co. v. Acme Fast Freight, Inc.,* 193 Ga. 598, 602 (19 S. E. 2d 286, 140 A. L. R. 1118).

*Judgment reversed. All the Justices concur.*