Albert **WRIGHT**, Petitioner,

v.

**Thomas DARNELL, William Hildreth and Thomas Gaunce, Review Committee of United States Department of Agriculture Commodity Stabilization Service, Respondents.**

No. 1437.

United States District Court
E. D. Kentucky,
Lexington.

June 1, 1962.

Clay & Edwards, Thomas M. Edwards, Jr., Mt. Sterling, Ky., for petitioner.

Bernard T. Moynahan, Jr., U. S. Atty., William A. Watson, Asst. U. S. Atty., Lexington, Ky., for respondents.

HIRAM CHURCH FORD, Chief Judge.

This action is by Albert Wright, owner of 1325 acres of farm land in Bath County, Kentucky, of which 1275 acres are considered crop land on which he has produced and marketed tobacco for many years under and pursuant to the provisions of the Agricultural Adjustment Act of 1938, as amended, 7 U.S.C.A. § 1311 through § 1368.

Petitioner invokes jurisdiction of this Court for review of the determination of the Bath County Review Committee, by which the burley tobacco crop allotment for Petitioner's farm for the year 1961 was fixed at 28.27 acres, the same amount fixed by the County Committee and the same amount which had been fixed in 1960.

The Petitioner's contention is clearly set out in paragraph 8 of his Complaint as follows:

"8. On (a) the findings of fact and (b) the conclusions of the review committee which are supported by the evidence, the petitioner was entitled, as a matter of law, to an increase of 2.99 acres in his 1961 burley tobacco allotment."

With the admission that the findings of fact and conclusions of the Review Committee are supported by the evidence, and the further fact that no application has been made for leave to adduce additional evidence, the findings of the committee are conclusive, leaving for determination by the Court only the question whether the action of the Review Committee is in accord with law, 7 U.S. C.A. § 1366.

It appears that the only substantial evidence introduced by Petitioner before the Review Committee consisted of a showing that, computed upon a percentage of crop land, the allotment of 28.27 acres for his farm was less than that allotted to numerous other farms in his vicinity.

By authority of § 1375(b) of the Act, the Secretary of Agriculture has prescribed regulations deemed necessary for the enforcement of the Act. The regulations governing the 1961–62 crop acreage of burley tobacco, so far as here material, are as follows:

"§ 725.1216. *Determination of 1961 Preliminary acreage allotments for old farms.*

"(a) The 1961 preliminary acreage allotment for an old tobacco farm shall be the 1960 farm acreage allotment established for such farm, prior to any reduction for violation of tobacco marketing quota regulations.

\* \* \* \* \* \*

"725.1218 *Adjustment of acreage allotments for old farms, correction of errors, and allotments for overlooked old farms.*

"Notwithstanding the limitations contained in § 725.1216, the individual 1961 farm acreage allotment heretofore established for an old farm may be increased if the county committee justifies such increase to the satisfaction of a representative of the State Committee as being necessary to establish an allotment for such farm which is fair and equitable in relation to the allotments for other old farms in the county, on the basis of the past acreage of tobacco, making due allowances for drought, flood, hail, other abnormal weather conditions, plant bed, and other diseases; land, labor and equipment available for the production of tobacco; crop rotation practices; and the soil and other physical factors affecting the production of tobacco * *."

■■ It seems to be made quite clear by the applicable statutes set out in Title 7 U.S.C.A. § 1313(c) and (g), as well as by the above regulations, that the available crop land is merely one of numerous factors to be considered in the allotment of tobacco acreage. However, as pointed out in Review Committee v. Wiley, (8 Cir.) 275 F.2d 264, 273, there must be some basis of allocation of acreage and the historical factor which takes into consideration each producer's past share of the market, while to some farmers it may be somewhat offensive, is not an arbitrary or unreasonable factor to employ. The mere fact that the Plaintiff finds himself at some comparative inequality with other farms of his locality when considered upon the basis of percentage of crop land, it is not illegal if it is in accord with valid regulations imposed by law to fill a need which Congress found to exist.

The Complaint does not assert that in fixing the 1961 allotment of the Petitioner at the same acreage as the 1960 allotment, either the County Committee or the Review Committee abused their discretion or acted arbitrarily or capriciously.

The Committee set out in its findings that the County Committee received only 2.99 acres for adjustment for old farms (see Stipulation). This entire amount is claimed by Petitioner. According to the evidence, the County Committee awarded this small amount to farms which they found to be "in worse shape than he was".

In Edwards v. Owens, 137 F.Supp. 63, 65, 66, (E.D.Mo.) after discussing the controlling regulations in respect to acreage allotments for growing cotton which seem to be quite similar to those provided by the Act in respect to allotments of burley tobacco acreage, the Court said:

" * * * Such is the plan in general, with the farm as the final objective. Unless the purposes of the Act can be carried out at the farm level it fails. * * * The regulations are as technical, if not more technical, in detail than the Act. Nonetheless, the plaintiff carries the burden of demonstrating that the findings of the county committee have no basis in the law or regulations which are valid under the law. * * *

"The findings of the county committee leave much to be desired. But we take note we are dealing with documents prepared by laymen * * *."

Obviously, to hold, as Petitioner contends, that the County Committee was bound to make the allotment as claimed by the landowner, it would make the landowner and not the committee the judge as to the acreage to be allotted on the basis provided by the regulations. If such practice should be established, the entire program would be in imminent danger.

The observation of the Supreme Court in Wickard v. Filburn, 317 U.S. 111, 129, 63 S.Ct. 82, 87 L.Ed. 122, seems pertinent here. "It is of the essence of regulation that it lays a restraining hand on the self-interest of the regulated and that advantages from the regulation common-

ly fall to others. The conflicts of economic interest between the regulated and those who advantage by it are wisely left under our system to resolution by the Congress under its more flexible and responsible legislative process. Such conflicts rarely lend themselves to judicial determination. And with the wisdom, work-ability, or fairness, of the plan of regulation we have nothing to do."

I am of the opinion that the Petitioner failed to sustain the burden of showing that the ruling of the Review Committee was unlawful or contrary to the established and applicable regulations.

For the reasons indicated, the Complaint should be dismissed.