TATE, Judge.
This is a proceeding to review an administrative determination pertaining to rice acreage planting allotments made by federal agency committees pursuant to the national Agricultural Adjustment Act, 7 U.S. C.A. § 1281 et seq. Basically, the plaintiff landowners contend that they are entitled to receive the entire rice acreage allotment previously allowed to the farmer from whom they purchased their land, whereas the defendant administrative tribunal allowed them only a portion of this acreage allotment.
The plaintiffs are members of a partnership (“Clubb”). Their specific complaint is that they are aggrieved by an illegal reduction of their farm’s rice acreage allotment from nearly 445 acres in 1961 to 270 acres in 1962. Made defendant are the members of the administrative tribunal (“Review Committee”) which had ordered this reduction.
The defendant Review Committee appeals from a judgment of the state district court (which has jurisdiction concurrent with the federal district court to review such administrative determinations, see 7 U.S.C.A. § 1365). The court judgment in essence directed the defendant committee to restore to the plaintiff’s farm its previous rice planting allotment.
To accomplish the national purposes of the Agricultural Adjustment Act, administrative machinery is provided to establish national, state, county, and producing-unit acreage planting allotments for certain basic crops, including rice.[1] The present rice acreage allotment affects land within a “farm administrative area”, in which (unlike in a “producer administrative area”) the rice acreage allotments are made to “farms” (not to the persons who produce rice) on the basis of the previous rice production of the producing tract, 7 U.S.C.A. § 1353(b); so that a transfer of the land normally carries with it the rice acreage allotment.
*79 1. The Facts.
This controversy stems from the following undisputed facts:
Prior to I960, the plaintiffs’ tract was part of the nearly 3800-acre plantation formerly farmed by Louis A. Fontenot. This parent tract will hereafter be referred to as the “Fontenot Farm”. (It is designated as Farm G-135 in the administrative records of the federal regulatory agency.) This tract had a rice acreage allotment of approximately 445 acres assigned to it under the administrative regulations of the federal agency.
In 1960, Fontenot desired to sell his plantation. Clubb, a rice producer, desired to buy only the western 1645 acres of it. Further, Clubb was interested in making this purchase only if the entire 445-acre rice acreage allotment of the Fontenot Farm was to be allotted to the portion of the parent tract to be purchased by Clubb.
Fontenot and Clubb therefore in March of 1960 contacted the local representatives of the federal regulatory agency administering the crop programs, in order to determine if such an allocation of the acreage allotment was permissible. They were at this time assured that under the federal regulations the entire rice acreage allotment could be assigned to the part of the Fontenot Farm which Clubb desired to purchase.
In May of 1960, therefore, Fontenot sold to Clubb the western 1645 acres of his land (to be referred to as the “Clubb Farm”), with the specific covenant that the entire 445-acre rice allotment was to be allocated to the Clubb Farm and transferred to Clubb along with the land. Immediately thereafter, Fontenot executed administrative forms, which were approved by the federal agency’s county committee in August of 1960. By this committee action, the Fontenot Farm was divided (“constituted”) into two tracts; one of them being administratively “constituted” as the “Clubb Farm” [2], to which the entire rice allotment and acreage histories of the parent Fonte-not Farm was allocated.
In 1961, the Clubb Farm received administratively the entire rice acreage allotment of nearly 445 acres of the former Fontenot Farm. Clubb made the 1961 rice crop on the basis of this rice acreage allotment.
In the meantime, during 1961, the remainder of the Fontenot tract (the “Rosewood Farm”) was conveyed to John Freeman. This land was transferred a few months later to the Rosewood Plantation, Inc., a corporation in which Freeman has a substantial interest.
In January of 1962, Freeman, the original purchaser of the Rosewood Farm, as an official of Rosewood, filed a complaint with the county committee of the federal agency. The complaint alleged that the 1960 action of this same committee had improperly allocated the entire Fontenot Farm rice acreage allotment to the Clubb farm; whereas, it was alleged, instead this allotment should have been divided between the Clubb Farm and the Rosewood Farm, pro rata in accordance with the proportionate rice cropland of each tract.
The county committee subsequently ruled that this complaint was justified. Accordingly, it recombined (“reconstituted”) the parent Fontenot Farm as it existed in May of 1960, thus recombining the Clubb and Rosewood Farms into a single unit for acreage allotment,purposes. The committee then again “reconstituted” the Clubb and Rosewood Farms as two units but divided the rice acreage allotment as between the *80 latter two tracts by allocating to the Clubb Farm only about one-half of the previous Fontenot Farm rice acreage allotment, with the remainder being attributed to the Rosewood Farm. Subsequently, this county committee action was substantially affirmed by the defendant Review Committee, to which Clubb had timely applied for review of the county committee’s adverse ruling, see 7 U.S.C.A. § 1363.
The present suit is a proceeding instituted to seek judicial review of this determination by the defendant Review Committee. It was timely brought under the provisions of 7 U.S.C.A. § 1366
Under the cited statutory enactment, “[t]he review by the court shall be limited to questions of law, and the findings of fact by the review committee, if supported by evidence shall be conclusive”. Further, the court must “hear and determine the case upon the original record of the hearing before the review committee * *
(There are also provisions for the remand for additional evidence to be taken at an administrative hearing in order to supplement the original record.)
2. The federal regulation upon which the opposing contentions are based as to whether or not all of the Fonte-not Farm acreage allotment was properly assigned to the Clubb Farm.
The Secretary of Agriculture is authorized to prescribe such regulations as are necessary in order to accomplish the purposes of the Agricultural Adjustment Act. 7 U.S.C.A. § 137S. A regulation adopted by the Secretary of Agriculture pursuant to this statutory authority will not be annulled by the courts unless it is plainly and palpably inconsistent with the statute; but such regulation may not be arbitrary and must have a basis in the statute and be within the authority granted to the administrative agency. Rigby v. Rasmussen, C.A. 10, 275 F.2d 861 (1960); Review Committee, Venue VII Commodity Stabilization Service, United States Dept. of Agriculture v. Willey, C.A. 8, 275 F.2d 264 (1960).
In the regulations adopted in connection with the rice acreage programs, several rules are recognized for “reconstituting” farm allotments and history acreages where a parent farm is to be reconstituted by division into two or more farms, including the “contribution method”, the “cropland method”, and the “history method”. See Regulation 719.8, Farm Constitution and Allotment Record Regulations of the Commodity Stabilization Service, USDA (reprinted at 25 Fed.Reg. 1816, March 2, I960; this regulation is also cited in some of the cases as Code of Federal Regulations, Section 719.8).
The federal agency contends that the proper method of dividing the acreage allotment of the parent Fontenot Farm is the “cropland” method, Regulation 719.8(a) (2). This method was sought to be applied by both the initial 1960 county committee action and also by the later administrative action in 1962, even though the 1960 and' 1962 administrative rulings respectively produced entirely different results.
Under the cropland method, the “current year allotments and allotment crop history acreages determined for the parent farm shall * * * be apportioned among the tracts in the same proportion that the acreage of cropland (acreage of developed rice land for rice) in each such tract bears to the cropland (developed rice land for rice) for the parent farm: Provided, however, THAT UPON REQUEST IN WRITING BY THE OWNERS AND OPERATORS, THE ALLOTMENTS AND HISTORY ACREAGES MAY BE APPORTIONED ON THE BASIS OF THE CROPLAND NORMALLY CONSIDERED AS AVAILABLE FOR AND ADAPTED TO1 THE PRODUCTION OF THE ALLOTMENT CROPS ON EACH TRACT, AS DETERMINED BY THE COUNTY COMMITTEE.” Regulation 719.8(a) (2). (Emphasis by capitalization supplied by us.)
*81 The crux of this controversy centers about the capitalized proviso. Under this provision, the administrative committees "may”, upon the owner’s request, apportion to the new farms the allotment and history acreages of the parent tract on the basis of the cropland “normally considered as available for and adapted to the production of” rice. (Italics supplied.)
In its 1960 action, the county committee’s interpretation of this proviso was that, even when the landowner had in the past devoted specified land to the cultivation of rice, such acreage could be considered as not “normally considered as available for” the production of rice, if the landowner had converted it to another use at the time of his application (however recently), or even if he intended to do so. That is, in the exercise of its discretion in apportioning the allotment between the farms into which a parent tract was divided, the county committee prior to 1962 afforded a great deal of weight to the landowner’s present intended use of the land, even though inconsistent with the past history of the land’s actual use.[3]
However, in 1962, as a result of the complaint of Rosewood’s owner which precipitated the present controversy, the county committee was informed that the above was an incorrect interpretation of the statutory regulation and that the committee should apportion the allotment rather on the basis of the actual past planting history and the actual present availability for rice planting of the land areas in the tracts into which the parent farm is to be divided (that is, instead of apportioning the acreage allotment on the basis of only-recent use or non-use or intended future use or non-use of the land).
If its 1960 interpretation of the proviso was correct, the county committee was within its discretion in assigning the entire parent-farm allotment to the Clubb Farm in 1960. Contrariwise, under the different 1962 interpretation, the parent-farm allotment should have been divided between the Clubb and Rosewood Farms, as it was by the 1962 administrative action of the agency committees.
3. Was the 1962 annulment of the 1960 reconstitution authorised by law and the applicable regulations?
In 1962 the county committee initiated action, see Regulation 719.5, to reconstitute the Clubb and Rosewood Farms under authority of Regulation 719.2(1) (4) (ii), which provides that: “A reconstitution of a farm either by division or by combination shall be required whenever * * * The farm was not properly constitued under the applicable regulations in effect at the time of the last constitution or reconstitution * * * ”, (Italics ours.)
In 1962 the county committee without an adversary hearing annulled its previous 1960 transfer of the parent tract’s allotment to the Clubb Farm. If the county committee in 1962 was acting within the intended scope of the quoted regulation as assumed by the appellant, then the able and most persuasive arguments of the counsel for the appellant Review Committee cannot easily be disregarded.
For, accepting this assumption, then: the administrative construction at the 1962 hearing by the agency of its own administrative regulations, is entitled to great weight and should ordinarily be applied by the court, Review Committee, Venue VII Commodity Stabilization Service, United States Dept. of Agriculture v. Willey, C.A. 8, 275 F.2d 264 (1960); also, on judicial review we are bound by the factual findings *82 of the committee as to what constitutes cropland and as to the proportionate amount of cropland in each of the two tracts into which the parent farm was divided, since the findings are supported by substantial evidence, Review Committee, Venue VII Commodity Stabilization Service, United States Dept. of Agriculture v. Willey, cited above (see especially text at Syllabus 9, 275 F.2d 273, which succinctly summarizes the jurisprudence as to the applicable standard of judicial review); and, finally, the Review Committee properly applied the pertinent administrative regulations and properly disregarded the contractual agreement between the private parties insofar as they attemped to convey or dispose of the acreage allotments in a manner contrary to the administrative regulations, Luke v. Review Committee, W.D.La., 155 F.Supp. 719 (1957) and Lee v. Berry, 219 S.C. 346, 65 S.E.2d 257 (1951).[4]
What this persuasive argument overlooks, however, is that, unlike in the cited cases, we are not here concerned only with an initial administrative ruling on this question with regard to the same property.
In the initial 1960 ruling, the county committee, having administrative jurisdiction to determine the question with regard to this property, had reached a different conclusion than this same committee did in 1962, when on its own motion it reopened the question and by an ex parte procedure issued a different ruling as to the same question involving the same land (this later ruling being based upon a different interpretation of the same administrative regulation as applied to the same 1960 facts). Under the appellant’s theory, the initial adjudication can thus be completely ignored, as if it had never been made and was totally void; so that the sole question now before us allegedly is whether the 1962 committee action correctly applied the 1960 administrative regulation to the 1960 facts.
This error in the appellants’ assumption, in our opinion, is that the 1960 adjudication with regard to this land by the county committee, which had administrative jurisdiction to act on it, may not be ignored as a total nullity and as if Clubb had acquired no rights or standing whatsoever as a result of such ruling. After all, this 1960 adjudication by the county committee is presumed to have been valid and within the scope of its authority, and based upon its presumed validity substantial property rights were created.
“The presumption of regularity supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties.” United States v. Chemical Foundation, 272 U.S. 1, 14-15, 47 S.Ct. 1, 6, 71 L.Ed. 131 (1926). “All reasonable presumptions must be indulged in support of the action of the officers to whom the law intrusted the proceedings * * Ross v. Stewart, 227 U.S. 530, 535, 33 S.Ct. 345, 346, 348, 57 L.Ed. 626 (1913).
There is no question under the pleadings and record but that the committee in 1960 determined in good faith that the Clubb Farm was entitled to receive the entire rice acreage allotment of the parent tract. This adjudication was made under an interpretation of the pertinent administrative regulation which was not on its face unreasonable, nor does the record reflect that such an interpretation was prohibited by or in conflict with the published administrative regulations pertaining to the question.
The 1960 ruling, further, was not in conflict with any fundamental policy of the Act and the administrative regulations by which the Act is enforced. While the regulations pertaining to “farm” acreage allotments are designed to prevent the transfer of an allotment from one farm to a different one, the regulations also specifically recognize in *83 stances where by written consent of the interested persons the allotment may be allocated to part of the acreage of a parent farm which is to be reconstituted into two or more successor units. Regulation 719.8 (a) (4).
Regulation 719.2,, under authority of which the county committee acted in 1962, provides that a farm must be reconstituted by the recombination of different tracts into which it was divided whenever “the farm was not properly constituted under the applicable regulations in effect at the time of the last constitution”. (The entire pertinent subsection of this regulation is quoted above in full.)
We conclude that the county committee in 1962 acted beyond the scope of the authority intended to be conferred upon it by the above regulation when it treated the Clubb Farm as “not properly constituted” by its previous 1960 ruling.
The 1960 constitution of the Clubb Farm is deemed valid under the presumption of regularity. In our opinion, it is not within the intended scope of the committee’s authority for it to be able to assume the contrary, just because the present committee feels that a different interpretation of the administrative regulations should have been applied by the earlier committee to those same facts. Even though the 1960 ruling may now be considered to have been in error, it was not a completely void ruling in its constitution of the Clubb Farm, so as to justify the successor committee several years later to ignore it as a complete nullity and to set it aside in an ex parte procedure.
To accede to the appellants’ argument, is to give a meaning to Regulation 719.2 by which the county committees have practically unlimited discretion to annul any previous adjudiction, however old or however recent, at any time that such committee or the successor members thereof choose to change the interpretation of the same administrative regulation in force at the time of the earlier ruling — or even possibly if the successor committee later chooses to-place a different factual interpretation upon the same facts which were the basis of the earlier adjudication.[5]
If the appellants’ contention is correct* the county committee can overnight rescind ex parte any earlier formal ruling that a certain land area constitutes a “farm” having consequent acreage allotment rights. The subsequent committee action cancelling ex parte the earlier adjudication is virtually immune from attack by the affected landowner, according to the appellants, because the agency’s new interpretation of its own rules is binding on the courts and virtually unreviewable by them — even though the landowner has had no prior notice or opportunity to uphold the previous determination by the agency that his present land holdings constitute a “farm” which is entitled to succeed to an established acreage history and acreage allotment.
Thus, under this view, overnight the committee can by ex parte action make worthless rights acquired and investments *84 made in reliance upon a previous formal determination by the committee, simply by declaring that the former committee determination was erroneous and therefore a nullity. (Here, Clubb invested almost three hundred thousand dollars in reliance upon the considered and apparently valid determination of the administrative committee in 1960 that to the Clubb Farm could legally be allocated the entire farm acreage allotment of the parent Fontenot Farm. While technically this acreage allotment may not be “property” subject to sale or assignment separate from the land, nevertheless an acreage allotment constitutes a most valuable property right as an incident of the land to which it is allocated, as the present record demonstrates — for without the full acreage allotment the Clubb Farm’s market value is substantially less than with the allotment.)
As contrasted with the appellants’ argument, it has been suggested that,, even though the application of res judicata in administrative proceedings is not as yet delimited, nevertheless an administrative determination concerning the same claim and the same transaction should be final and binding when based on past facts. 2 Davis, Administrative Law Treatise (1958), Chapter 18, pp. 545 et seq., especially Section 18.03 at p. 559. (Such a situation is to be distinguished from one where a regulation of prospective force is not considered as retroactive, although it depends upon determinations based upon past events. Bishop v. Review Committee, Venue V, C.A. 8, 298 F.2d 386, (1962); Balkcom v. Cross, 216 Ga. 530, 118 S.E.2d 185, (1961) ; 1 Davis, Sections 5.08, p. 339, 5.09, p. 347.)
But we need not hold in the present instance that the initial formal agency determination constituting the Clubb Farm is final and binding as a result of res judicata or estoppel principles. Nor need we suggest that, at the very least, the burden should not be on the landowner to prove the validity of the previous formal administrative action constituting his land area as an administrative “farm”; that, instead, the burden should be on the administrative committee to prove the Mi-validity of this previous presumed-lawful adjudication by it, in reliance upon which valuable property rights were acquired and are founded.
We prefer to rest our holding herein simply upon the determination that the county committee did not as a matter of law have the right in 1960 to ignore and to rescind ex parte the presumably-valid formal committee action in 1960 by which this committee had constituted the Clubb Farm to be the successor entity to the acreage histories and acreage allotments of the parent Fontenot Farm. This determination by us is, of course, within the scope of judicial review of such administrative orders; see 7 U.S.C.A. § 1366, “The review by the court shall be limited to questions of law.”
In summary, in our opinion, an administratively-designated farming unit, together with its acreage allotment, is not within the intent of the regulation to be treated as “not properly constituted” for purposes of annulling it under Regulation 719.2 by ex parte procedures, at least in instances such as the present: where such farming unit was created in good faith by a ruling of a county committee empowered to act on it, which ruling did not result from any misrepresentation by the parties; where in addition such ruling was made under an interpretation of the pertinent administrative regulations not clearly illegal or contrary to the fundamental policy of the Act; where further such ruling was made under circumstances which did not put the private persons affected by it on notice that there was any question as to its validity; and where finally (in addition to all these other circumstances) private parties have substantially changed their position in reliance upon the original administrative ruling with regard to the specific land in question, as a result of which valuable property interests are based upon the validity of such specific ruling.
To hold to the contrary, is to construe the administrative regulation (719.2) as con *85 ferring upon the county committees practically unlimited and unreviewable power to disregard and cancel ex parte their prior formal determinations by which a given land area is formally constituted a “farm” to which is attributed certain acreage allotment rights; even though valuable property rights are based on reliance upon such prior formal adjudication by the committee. We cannot regard the conferring of such arbitrary powers upon the county committees as reasonably implied by the regulation or as reasonably necessary to accomplish the purposes of the Act.
For the foregoing reasons, we affirm the trial court judgment, which directed the administrative committees to restore to the Clubb Farm the entire rice acreage allotment of the parent Fontenot Farm, in accordance with the valid constitution of the Clubb Farm in 1960.
Affirmed.

. A comprehensive discussion of the statutory scheme of the Act, its implementation by administrative action, and jurisprudence arising under it, is contained in Review Committee, Venue VII Commodity Stabilization Service, United States Dept. of Agriculture v. Willey, C.A.8, 275 F.2d 264 (1960).

. The Clubb tract was denoted administratively as “Farm G-4501”; the eastern remainder of the Fontenot Farm was des-signated as “Farm G-4502”. For the sake of simplicity in this opinion, we will henceforth refer to the tracts involved in this litigation as: the “Fontenot Farm”, the parent tract'; and the “Clubb Farm” and the “Rosewood Farm”, the two tracts into which the parent farm was divided by this administrative action, and which are now owned respectively by Clubb and by Rosewood.

. See Article XIII of tlie answer of the defendant Review Committee, stating, Tr. 37-38, “That the County Committee made the reconstitution under the Farm Constitution and Allotment Record Regulations, using the cropland method set forth in Section 719.8(a) (2), and applying the proviso set forth in said section on the basis of the request of Louis A. Fontenot and under the interpretation that such proviso could be used to disregard the actual history of planting and the actual history of cropland so long as the farm owner requested it.”

. See Duncan v. Black, Mo.App., 324 S.W.2d 483, 485 (1959) : “The allotment runs with the land. It is not the separate ‘property’ of the individual and is not subject to be sold, bartered or removed to other land.”

. Much latitude is permitted to the committee in determining what is “cropland” for purposes of apportioning the acreage allotment between the tracts into which the parent farm is divided. Regulation 719.10 frankly admits, “The definition of cropland requires certain factual determinations and provides latitude for county . committee judgment with respect to several factors.” (In 1962, for instance, the county committee made certain determinations that some land areas were “cropland”, with which the Review Committee disagreed.)
If the reconstitution power is as broad as the appellant Review Committee contends, apparently a later county committee could even years later disregard and annul earlier constitutions of farms by its predecessor committee on the ground that the farms were “not properly constituted” by reason of the later committee’s, different interpretation of these same-earlier facts, based upon a different weighting of these same variable and discretionary factors by which it is determined whether or not a given land area is. “cropland”.