SUMMERS, Justice.
This action arises under the provision of the Agriculture Adjustment Act of 1938, 7 U.S.C. § 1281 et seq. It was commenced by Herbert Clubb and Sons, a family partnership, pursuant to 7 U.S.C. § 1365, to review a decision of the Statutory Review Committee, confirming an administrative determination of the Avoyelles Parish, Louisiana, Agricultural Stabilization and Conservation (ASC) County Committee which effected a change in the rice acreage allotment alloca-ble to the “Clubb” farm. The trial court overturned the administrative decision and this action was affirmed in the Court of Appeal, Third Circuit. Writs were granted upon application of the Statutory Review Committee.
Under the pertinent act the Congress of the United States found that rice and its products move almost wholly in interstate and foreign commerce from the producer to the consumer, that the farmers producing rice are subject in their operations to “uncontrollable natural causes”, carry on their operations on “borrowed money or leased lands”, are unable to “organize effectively”; and for “these reasons, among others, the farmers are unable without Federal assistance to control effectively the orderly marketing of such commodity with the result that abnormally excessive supplies thereof are produced”. (7 U.S.C. §§ 1351(a)) Consequently, the “disorderly marketing” of such excessive supplies “burdens, and obstructs interstate and foreign commerce”. *64 (7 U.S.C. § 1351(b)) The act provides for the establishment of an annual “national acreage allotment of rice” (7 U.S.C. § 1352). Under the provisions of the act the yearly •national allotment, the purpose of which is do produce a “normal supply” of rice, shall he determined by the Secretary of Agriculture “on the basis of the national average yield of rice for the five calendar years immediately preceding” the year in question (7 U.S.C. § 1352). In conformity with this ■statutory mandate, the Secretary has annually determined, and provided by regulation, the annual national rice acreage allotment.
As a second step, the act provides for apportionment of the national allotment to appropriate states. Pursuant to 7 U.S.C. § 1353(a) this initial apportionment is to be made “among the several States in which rice is produced in proportion to the average number of acres of rice in each State” during the immediately preceding five-year period. In accordance with this requirement, the Secretary has, by regulation, apportioned the annual national allotment .among the several rice-producing states.
For the third and final step, the act provides for allocation of the state allotment to rice farms within each particular state. In some states the allocation is made directly “to farms”, while in others the allocation is made first to counties and then “to farms” (Louisiana being in the latter group) ,[1] But, in any event, the allocation is ultimately “to farms” — rather than to the owners or operators thereof. This allocation to farms is governed by detailed regulations. See 7 C.F.R. Part 730.
Determinations relating to allocation of acreage allotments are initially made by the ASC County Committee, a body composed of local farmers. See 7 C.F.R., Part 718. The act provides for review by a local review committee also composed of local farmers (7 U.S.C. § 1363) and, in the event of further dissatisfaction, for the filing of a bill in equity or commencement of a review proceeding in the appropriate United States District Court, or in a state court of general jurisdiction (7 U.S.C. § 1365). The act narrowly defines the scope of review in such proceedings: 7 U.S.C. § 1366 provides that such review “shall be limited to questions of law, and the findings of fact by the review committee, if supported by evidence, shall be conclusive.”
The facts of this case are essentially undisputed and reveal that in 1960 Louis A. Fontenot, his son and son-in-law owned a 3706-acre rice farm.
Pursuant to the foregoing provisions of the act, the Fontenot farm was allocated an annual rice acreage allotment of 450 acres during the period in question. In March 1960 Fontenot entered into an agree *65 ment with the Clubbs to sell them the western 1645 acres of the farm with the understanding that Fontenot would do whatever was necessary to effectuate the transfer of the rice allotment to the Clubbs. Thereafter, in April 1960 Fontenot released his rice allotment to the county committee, it being his expressed intention to cease planting rice and to devote the remainder of his farm, the eastern portion, primarily to cattle grazing. Then on May 26th of «the same year, after receiving verbal assurances from the county committee that all of the allotment could be assigned to the Clubb farm, Fontenot sold the 1645 acres or western portion of the farm to the Clubbs for $189,000 and signed the necessary request for division of the farm and the allotment on a cropland basis.[2] The county committee then reconstituted the farm, assigning the entire allotment of 443.9 acres to the Clubb farm under applicable regulations which provide:
“If the contribution rule is not applicable, the current year allotments and allotment crop history acreages determined for the parent farm, shall, except as otherwise provided under contribution and history methods, be apportioned among the tracts in the same proportion that the acreage of cropland (acreage of developed rice land for rice) in each such tract bears to the cropland (developed rice land for rice) for the parent farm: Provided, however, That upon request in writing by the owners and operators, the allotments and history acreages may be apportioned on the basis of the cropland normally considered as available for and adapted to the production of the allotment crops on each tract, as determined by the county committee.” 7 C.F.R. 719.8(a) (2).
The stated reason for the reconstitution was: “Part of this farm was sold. The portion sold was all adaptable rice land on the farm. The acreage sold is the rice acreage normally planted on this farm. Mr. Fontenot’s portion will be mostly pasture and has some land adaptable for cotton.” It was further concluded that the allotment was divided on the basis of “available and adaptable Cropland & Cropland.”
The Clubbs then took possession of the farm and produced a crop of rice on 429 acres of the allotment during 1961. Relying on the reconstitution thus made, substantial additional capital outlays were made by the Clubbs in connection with this farm.
In the meantime, during February 1961, Fontenot sold the remainder of his farm to John D. Freeman; Freeman, in turn, conveyed the land to Rosewood Plantation, Inc., a corporation owned by himself and another. Pursuant to the foregoing reconstitution, the 1961 rice acreage allotment for the farm acquired by Freeman continued to be zero.
A similar 1962 allotment, however, did not go uncontested. In early 1962 Rosewood complained to the county committee that since its farm contained land available and adaptable for rice planting, thereby entitling it under the regulations to a proportionate share of the rice acreage allotment, the earlier reconstitution of the allotment was erroneous and should not be continued for the coming year. As a result in 1962 the county committee ex parte reconstituted the entire parent farm and allocated a proportionate share of the allotment to the Clubb and Rosewood farms. Under this reconstitution the Clubb farm was then entitled to an allotment of 253.8 acres and the Rosewood farm was entitled to 257.2 acres for the year 1962.
The Clubbs, upon receipt of notice of this reconstitution, on February 13, 1962, upon the authority of 7 U.S.C. § 1363, filed an *66 application for review of the county committee's action. A review was accordingly had, the review committee finding that under the applicable regulations,[3] "reconstitution is required to be made on the basis of the facts and conditions existing at the time the changes occurred making it necessary”, and that, at that time, those facts and conditions were such as to require a proportionate allocation (such as that recently made by the county committee), and to render improper the former disparate allocation. This suit then followed.
It is asserted that the court of appeal erred in holding that the county committee lacked authority in 1962 to reconstitute the rice acreage allotment allocated to the Clubb farm.
The authority for reconstituting the Clubb and Rosewood farms under which the county committee acted is contained in 7 C.F.R. 719.2(4) (1) (ii) which provides: “A reconstitution of a farm either by division or by combination shall be required whenever: * * * The farm was not properly constituted under the applicable regulations in effect at the time of the last constitution or reconstitution; * * * ” (Emphasis supplied.)
The issue which must first be resolved, therefore, is whether the original reconstitution in 1960 was proper, for if it was, we can discern no authority of the committee to invoke another reconstitution.
On the other hand, if the original reconstitution was improper, we would then be called upon to consider the legal correctness of the action of the review committee.
The original reconstitution was made upon the basis of a proviso contained in the cropland method of reconstitution which is admittedly applicable here. That proviso reads:
“That upon request in writing by the owners and operators, the allotments and history acreages may be apportioned on the basis of the cropland normally considered as available for and adapted to the production of the allotment crops on each tract, as determined by the County Committee.” 7 C.F.R. 719.8(a) (2).
The record amply supports a finding that the contemplated request was made by Fontenot and orally approved by the committee in 1960, and later reduced to writing according to their understanding. It is quite evident, too, that there was ample cropland on the Clubb portion of the farm to accommodate the entire allotment.
The crux of the problem is whether there was, because of Fontenot’s relinquishment of his allotment, any cropland “normally considered as available” on the Rosewood or eastern portion of the parent farm at the time of the 1960 reconstitution which would require apportionment of some of the allotment to that farm.
Admittedly there was' cropland on the Rosewood side in 1960, but the county committee found then that it was not “available” within the meaning of the quoted proviso. This conclusion was undoubtedly based upon the undisputed fact that Fonte-not had surrendered all allotments insofar as his acreage was concerned and had declared his intention to devote all of that *67 acreage exclusively to cattle raising. This declared intention was further manifested by his request for reconstitution and allocation of all of the allotment to the “Clubb” farm; by his corrugation of some of the acreage and application for assistance to inaugurate certain practices on that acreage which were incompatible with rice farming.
The conclusion is inescapable that Fontenot’s farm was not available for rice planting at the time of the 1960 reconstitution. Because that land was not “available” cropland it could receive no apportionment of the allotment. It follows then that the apportionment was properly made to the cropland on the other division of the parent farm then available for the planting of rice — tlie Clubb farm. Because the allotment in 1960 was proper, there was no basis under the act to reconstitute again in 1962. The fact that the Rosewood farm declared its lands “available” for rice production in 1962 can have no effect on the propriety of the action of the county committee in 1960. It is the facts of 1960 which must be viewed to determine whether the county committee acted properly then — not the facts of 1962. See 7 C.F.R. § 719.7(a), supra.
It is strongly urged on behalf of the review committee that allotments are made to farms and not to the individual, and may not be sold or bargained between landowners. The authorities relied upon are: Luke v. Review Committee, D.C., 155 F.Supp. 719 (1957); Balkcom v. Cross, 216 Ga. 530, 118 S.E.2d 185 (1961) ; Lee v. Berry, 219 S.C. 346, 65 S.E.2d 257 (1951) and Duncan v. Black, 324 S.W.2d 483 (Mo.App.1959). These authorities are not applicable to the case at bar. In each of these cases the purported transfer of the allotment was made without the approval of the county committee. In the case before us the actual transfer or allocation of the allotment was made by the county committee, and it is the action of that committee which is in question and not the action of the landowners.
We understand the primary policy of the act to be to promote the economics of the farmer because of his inability to organize and control overproduction. There is no offense to this objective by our decision here. We think the letter and the spirit of the act are served by our decision.
A result wholly foreign to the policy of the act and the language of the proviso would ensue if a landowner could declare his farm unavailable for rice, as was done here, and a reconstitution properly made by the committee at his request, on the basis of that declaration, and relied upon by the landowner to whom the allotment was apportioned, could subsequently be set aside when the farm fell into new hands because of a change in farming policy by the new owner and thus bring about the virtual financial ruin of the landowner to whom the apportionment had been made' — he having made extensive financial outlays in reliance upon the action of the county committee, which, under the facts and regulations then in effect, was in all respects proper.
Accordingly, the judgment of the court of appeal is affirmed.

. The governing statute, 7 U.S.C. § 1353 (b), initially provides that the state allotment “shall be apportioned to farms owned or operated by persons who have produced rice in the State” in any of the immediately preceding five years “on the basis of past production of rice in the State by the producer on the farm taking into consideration the acreage allotments previously established in the State for such owners and operators; * * * ” This section then goes on to provide an alternative for the Secretary; that, on recommendation of the State ASC Committee, he may allocate the allotment “using past production of rice on the farm and the acreage allotments previously established for the farm in lieu •of past production of rice by the producer •and the acreage allotments previously established for such owners or operators * * * ” Where the Secretary employs the alternative method of apportionment (viz., farm production rather than producer production), 7 U.S.C. § 1353(c) (1) provides that apportionment of the state allotment must first be made to counties and then the county allotment “shall be apportioned to farms.”
In the State of Louisiana both methods are employed, and, therefore, pursuant to the proviso in 7 U.S.C. § 1353(b), the Secretary has divided the state into two administrative areas, a “producer administrative area” and a “farm administrative area.” The Parish of Avoy-elles, in which the land in question is located, is within the Louisiana “farm administrative area” (see 7 C.P.R. § 730.1011 (m)), and thus the acreage allotment is apportioned first to counties and then “to farms.”

. The method of apportioning the rice acreage allotment as a result of the division of the Fontenot farm into two farms is provided for by 7 C.F.R. § 719.8 (1960 rev., 1962 Supp.) Of the three methods provided therein the only one applicable here is the “cropland method”.

. 7 C.F.R. § 719.7(a) (1960 rev., 1962 Supp.) providing:
“Whenever, under the definition of a farm, the county committee determines that a farm should be reconstituted, the farm allotments, history and soil bank base acreages shall be reviewed in accordance with this regulation, and related county office records shall be corrected as necessary to properly reflect the basic data for each farm as reconstituted. All reconstitutions shall be made in accordance with the provisions of this regulation and to the extent practicable, shall be based on facts and conditions existing at the tvme the change resulting in the reconstitution occurred rather than on the facts and conditions existing at the time the actual reconstitution action is taken by the county committee.” (Emphasis supplied.)